UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER HALBACH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV02399 ERW |
| ) | |
| GREAT-WEST LIFE & ANNUITY ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendants' Motion to Dismiss [doc. #20]. Plaintiff filed suit on December 28, 2005 alleging Defendants violated provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

**I. BACKGROUND**[1]

Plaintiff is the personal representative of the Estate of John Lewis. In the past, Mr. Lewis ("Participant")[2] was employed by Defendant Great-West Life & Annuity Company ("Great-West"). Great-West is the plan sponsor and claims administrator of Defendants Great-West Life & Annuity Insurance Company Employee Welfare Benefit Plan, Health and Welfare

---

[1]The Court will consider all of Plaintiff's allegations to be true. *See Breedlove v. Earthgrains Baking*, 140 F.3d 797, 799 (8th Cir. 1998) (noting that "[a] district court must accept the allegations contained in the complaint as true").

[2]Pursuant to the provisions of ERISA, a "participant" is:
   any employee or former employee of an employer, or any member or former
   member of an employee organization, who is or may become eligible to receive
   a benefit of any type from an employee benefit plan which covers employees of
   such employer or members of such organization, or whose beneficiaries may be
   eligible to receive any such benefit.
29 U.S.C. § 1002(7).

1

Plan of Great-West Life and Annuity Company, Great-West Life & Annuity Insurance Company Flexible Benefits Plan and Great-West Life Staff & Agents' Plan ("Plans").[3] Participant suffered from muscular dystrophy and was approved for long-term disability leave on April 19, 2004. He was eligible and received long-term disability benefits until his death on March 6, 2005. From April 19, 2004 through December 31, 2004, Participant and other disability benefit recipients received benefits pursuant to the Plans on terms equivalent to active, non-disabled employees.

On November 8, 2004, Defendants mailed a letter to Participant giving notice that medical benefits would no longer be continued for current or future long term disability claimants

---

[3]These plans are "employee welfare benefit plans." There are two types of employee benefit plans under ERISA, welfare plans and pension plans. *See* 29 U.S.C. § 1002(3). An "employee pension benefit plan" is:
> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program-
> (i) provides retirement income to employees, or
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C.A. § 1002(2). As distinguished from an "employee pension benefit plan," an "employee welfare benefit plan" (or "welfare plan") is:
> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

after December 31, 2004.[4] Because he was no longer qualified as an eligible participant under the Plan, the letter informed Participant that, under the Federal Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), he had the option of continuing his Plan coverage after his coverage ended. Participant opted to continue coverage until his death by paying premiums under COBRA.

On February 1, 2005, Plaintiff requested documents from Defendants pursuant to 29 U.S.C. §§ 1024(b)(4), 1133, 1132(c)(1) and 29 C.F.R. §§ 2560.503-1(g)(1)(ii), 2560.503-1(g)(2). Plaintiffs requested: (1) Plan documents; (2) Summary plan descriptions; (3) Latest annual reports; (4) Trust agreements; (5) Contracts and other instruments under which the Plans are established []or operated; (6) Detailed explanation of all reasons and bases for denial of medical benefits to Mr. Lewis and all other similarly-situated plan participants specifically citing all applicable plan provisions; (7) All documents, records and other evidence considered in such determination, upon which such determination is based, and relevant to the decision to deny or reduce benefits; (8) All documents reflecting, or pertaining, to the determination to deny the Participant and all other similarly situated employees' medical benefits; (9) The names, addresses and telephone numbers of all disability benefit receipts whose medical benefits have been

---

[4]The Court considers the November 8, 2004 letter to be embraced by the proceedings. *See Porous Media Corp v. Pall Corp*, 186 F.3d 1077, 1079 (8th Cir. 1999). "When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). Here, Plaintiff specifically referenced and attached the November 8, 2004 letter to her Complaint. *See* Complaint ¶ 23. Although not attached to the Complaint, the Great-West Life & Annuity Insurance Company Employee Welfare Benefit Plan was referenced in the Complaint and will also be considered by the Court. Moreover, the Eighth Circuit considers the Summary Plan Description ("SPD") to be part of the Plan, so it will also be considered. *Hughes v. 3M Retiree Medical Plan*, 281 F.3d 786, 790 (8th Cir. 2002).

terminated since January 1, 2004; (10) All documents available for consideration in such determination but either not considered or rejected as irrelevant or rejected for any other reason; (11) A copy of Mr. Lewis' entire claim file; and (12) All correspondence in this matter.

After failing to respond to Plaintiff's letter, Plaintiff sent a renewed request for the information on September 19, 2005. On November 21, 2005, Plaintiff received some of the requested documents. Plaintiff claims that Defendants did not send: (5) Contracts and other instruments under which the Plans are established []or operated; (6) Detailed explanation of all reasons and bases for denial of medical benefits to Mr. Lewis and all other similarly-situated plan participants specifically citing all applicable plan provisions; (7) All documents, records and other evidence considered in such determination, upon which such determination is based, and relevant to the decision to deny or reduce benefits; (8) All documents reflecting, or pertaining, to the determination to deny the Participant and all other similarly situated employees' medical benefits; (9) The names, addresses and telephone numbers of all disability benefit receipts whose medical benefits have been terminated since January 1, 2004; (10) All documents available for consideration in such determination but either not considered or rejected as irrelevant or rejected for any other reason; (11) A copy of Mr. Lewis' entire claim file; and (12) All correspondence in this matter.

## II. MOTION TO DISMISS STANDARD

A complaint shall not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support" of a claim entitling him or her to relief. *Breedlove v. Earthgrains Baking*, 140 F.3d 797, 799 (8th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In an order on a motion to dismiss, the court must assume that all allegations in the complaint are true and construe all reasonable

4

inferences in the plaintiff's favor. *Hafley v. Lohman*, 90 F.3d 264, 267 (8th Cir. 1996) (citing *McCormack v. Citibank*, N.A., 979 F.2d 643, 646 (8th Cir. 1992)). The complaint "should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. However, a complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46. "The Court need not, however, accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if they are couched as factual allegations." *Davis v. Bemiston-Carondelet Corp.*, 2005 WL 2452540, at *5 (E.D. Mo. Oct. 4, 2005) (citing *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997).

### III. DISCUSSION

In Count I of her Complaint Plaintiff seeks damages and injunctive relief on behalf of John Lewis and other similarly situated Plan beneficiaries. Plaintiff claims that Defendants' denial of Participant's health insurance benefits violates ERISA and the Plan because (1) the denial contradicts the Plan's provisions and (2) Defendants' denial is discriminatory and based on impermissible criteria. In Count II, Plaintiff seeks statutory damages under ERISA alleging that Defendants failed to timely respond to legitimate information requests. Defendants filed the instant Motion to Dismiss averring that Plaintiff's claims fail as a matter of law.

#### Violation of Plan Provisions

Plaintiff claims that Participant's benefits could not be terminated because his right to receive the benefits was vested. "ERISA does not create any substantive entitlement to employer-provided health benefits." *Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1008 (8th Cir. 1996) (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). "[V]esting is not mandatory for 'employee welfare benefit plans' - plans that offer

5

benefits such as the medical benefits here at issue. Therefore, an employer may unilaterally modify or terminate medical benefits at any time 'absent the employer's contractual agreement to the contrary.'" *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 949 (8th Cir. 1994) (internal citation omitted); *Stearns v. NCR Corp.*, 297 F.3d 706, 711 (8th Cir. 2002); *see also Howe v. Varity Corp.*, 896 F.2d 1107, 1109 (8th Cir. 1990) (ERISA's mandatory vesting requirements for pensions do not apply to welfare benefits); *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11th Cir. 1993) ("Congress intended employers to be free to create, modify, or terminate the terms and conditions of employee welfare benefit plans as inflation, changes in medical practice and technology, and the costs of treatment dictate.").

ERISA provisions require that an employee benefit plan be in writing. 29 U.S.C. § 1102(a)(1). Thus, any contractual agreement with the employer providing vested benefits must be "incorporated, in some fashion, into the formal written ERISA plan."[5] *Jensen*, 38 F.3d at 949;

---

[5]Plaintiff cites two Second Circuit cases which treat vesting of disability plans differently than vesting of other welfare plans. The cases hold that "absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled." *Feifer v. Prudential Ins. Co. of Amer.*, 306 F.3d 1202, 1212 (2d Cir. 2002); *see also Gibbs v. Cigna Corp.*, 440 F.3d 571 (2d Cir. 2006). The Second Circuit has reasoned that ambiguities in plans should be interpreted against the drafter. *Gibbs*, 440 F.3d at 576-77. The court also noted that "disabled employees neither can reject the terms offered by their employers and secure work elsewhere, nor predict the date of separation from their employer and plan accordingly. This Court finds that this reasoning is inconsistent with the reasoning employed by the Eighth Circuit in cases relating to vesting of disability benefits and vesting of retirement benefits. First, the Eighth Circuit has specifically held that ambiguities in contract provisions should only be construed against the drafter as a last step. *Bond v. Cerner Corp.*, 309 F.3d 1064, 1068 (8th Cir. 2002); *but see also Bernards v. United of Omaha Life Ins. Co.*, 987 F.2d 486, 488 n.1 (8th Cir. 1993) ("the common law rule of construction that ambiguous language in an insurance policy is construed against the insurer has no place in the construction of an ERISA plan"). Second, although the Eighth Circuit has not specifically addressed whether disability benefits vest absent explicit language to the contrary, the court consistently relies on the rule that "any promise to provide vested benefits must be 'incorporated, in some fashion, into the formal written ERISA plan.'" *See e.g.*, *Barker v. Ceridian Corp.*, 122 F.3d 628, 633 (8th Cir. 1997) ("*Barker I*"). In a case dealing with benefits for retirees, the Eighth Circuit has generally stated that "[n]owhere do these [ERISA] regulations

6

*Hughes*, 281 F.3d at 790. "Thus, although ERISA is the governing law, this case turns on whether vested health benefits were contractually conferred[.]"[6] *See Morrell & Co. v. United Food and Commercial Workers Intern'l Union*, 37 F.3d 1302, 1304 (8th Cir. 1994); *Howe*, 896 F.2d at 1109. Contract interpretation is a matter of law. *Barker I*, 122 F.3d at 634 (citing *Local Union No. 150-A, United Food and Comm. Workers Intern'l. Union, AFL-CIO, CLC v. Dubuque Packing Co.*, 756 F.2d 66, 69 (8th Cir. 1985).)

> When interpreting ERISA plan documents, we look to the law of trusts: The terms of trusts created by written instruments are determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissable. In determining if other evidence is admissible we look to the language of the plan provision at issue and consider whether the provision is ambiguous: that intent [of the settlor] is first sought by careful examination of the trust clause in question, giving the words in that clause their ordinary meanings. If the construction question cannot be resolved by reference to the clause alone, the court will examine the entire trust instrument to determine the creator's intent and purposes. . . .[T]he third step becomes necessary when the intent or meaning of the settlor. . .cannot be determined by reference to the provisions of the trust instrument itself. Extrinsic evidence will be admitted by the court to assist it in determining the meaning and effect of the particular clause.

*Barker I*, 122 F.3d at 633 (internal citations and quotations omitted).

---

require that a welfare plan SPD [Summary Plan Description] specifically disclose that its benefits are not vested. That these benefits need not be vested was one of the most important legislative decisions reflected in ERISA." *Jensen*, 38 F.3d at 952. Moreover, this Circuit's reasoning that intent to provide vested retirement medical benefits must be demonstrated in a written plan is consistent with the requirement that plaintiff must prove a written intent to provide medical benefits to disabled beneficiaries. *Barker I*, 122 F.3d at 634; *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1517 (8th Cir. 1988) ("there must be a specific, if not written, expression of the employer's intent to be bound"). It is unclear how disabled plan participants are any less prepared for a change in benefits than retired participants. Thus, the Court is not persuaded by the reasoning in *Feifer* or *Gibbs*.

[6]Plaintiff has the burden of proving the benefits are intended to be vested. *Howe*, 896 F.2d at 1109; *Jensen*, 38 F.3d at 949.

7

In this case, Plaintiff refers the court to two provisions of the Plan. Section 5.1 of the January 1, 1997 Plan, entitled "**Amendment of Plan**," states that:

> The Company reserves the right at any time or times to amend the provisions of the Plan to any extent and in any manner that it may deem advisable, by a written instrument signed by an officer of the Company; provided, however, that no such modification shall divest a Participant of benefits under the Plan to which he has become entitled prior to the effective date of the amendment.

Section 5.2 of the Plan, entitled "**Termination of Plan**," goes on to provide that:

> The Company has established the Plan with the bona fide intention and expectation that it will be continued indefinitely, but the Company has no obligation whatsoever to maintain the Plan in whole or in part for any given length of time and may terminate the Plan in whole or in part by written instrument signed by an officer of the Company at any time without liability; provided, however, that such termination shall not divest a Participant of benefits under the Plan to which he has become entitled.

Plaintiff claims that these provisions expressly declare that certain welfare benefits vest and may not be discontinued or reduced by Defendants. Next, Plaintiff directs the Court's attention to a section entitled "**Can I Continue Benefits If I Become Ineligible for Coverage under This Plan?**" in the January 1, 2001 SPD.[7] The section provides:

> You may be able to continue certain benefits even if you would otherwise become ineligible for coverage under this Plan.
> These are the categories of coverage available.
> •Continuation Coverage - You receive the same benefits you were entitled to as an Employee at the same cost to you, if any.
> •Coverage under COBRA - If you elect this coverage, you receive the same health benefits you were entitled to as an Employee, but you will be responsible for paying the COBRA premium.
> . . .
> With continuation coverage, the same benefits you were entitled to as an Employee will continue at the same cost to you, if any.
>
> If you become ineligible because your Service terminates for one of the following reasons, you will receive continuation coverage:

---

[7]Plaintiff refers the Court to the January 1, 2001 SPD, claiming that the other SPD versions do not contain this section.

- Illness;
- Leave of absence;
- Temporary layoff.

The following chart shows the length of time certain benefits are available under continuation coverage.

| Length of Time Continuation Coverage Provides Benefits | |
|---|---|
| **Loss of Coverage Due to Illness** | |
| Medical, Prescription Drug, Dental and Vision Benefits | If a person has been approved for LTD [Long-Term Disability] benefits, coverage continutes during the course of the total disability |
| Life Benefits | If a person has been approved for LTD benefits, coverage continues during the course of the total disability |
| AD&D [Accidental Death & Dismemberment] Benefits | No continuation |
| Long Term Disability (LTD) Benefits | No Continuation |
| **Loss of Coverage Due to Leave of Absence or Temporary Layoff** | |
| Medical, Prescription Drug, Dental and Vision Benefits | 31 days after the date your Service terminated. |
| Life Benefits | 31 days after the date your Service terminated. |
| AD&D [Accidental Death & Dismemberment] Benefits | No continuation |
| Long Term Disability (LTD) Benefits | No Continuation |

Your continuation coverage will end sooner than stated above if you fail to pay for this continuation coverage.

Next, Plaintiff refers to the January 1, 2004 SPD, under the heading **"Can I continue or Convert my Coverage If I Become Ineligible?"** The clause provides that

> If you become ineligible for coverage under the Plan, you may be able to continue coverage for certain benefits.
>
> <u>Continuation of Life Insurance, Medical, Prescription Drug, Dental, and Vision Benefits during an Illness or Absence</u>
> If your Service ends due to Illness and you have been approved for LTD benefits, coverage will continue during the course of the total disability.
>
> Your coverage will end sooner than stated above if you and/or your Employer fails to pay for this continuation coverage

"The federal courts apply federal common law rules of contract interpretation to discern the meaning of terms in an ERISA plan." *Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004). Contracts "should be construed so as to give effect to all the contract's provisions." *Barker I*, 122 F.3d at 637. Furthermore, "each provision should be read consistently with the others and as part of an integrated whole." *Id*. at 637-38; *see also Bond*, 309 F.3d at 1067-68. Courts are to interpret plan provisions by giving the terms their "common and ordinary meaning[.]" *Adams v. Continental Cas. Co.*, 364 F.3d 952, 954 (8th Cir. 2004); *see also Brewer v. Lincoln Nat. Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir. 1990).

In general, "a reservation-of-rights provision is inconsistent with, and in most cases would defeat, a claim of vested benefits." *Stearns*, 297 F.3d at 712 (quoting *Jensen*, 38 F.3d at 950). Courts have consistently held than an unambiguous reservation of rights clause will defeat a claim that welfare benefits are vested. *Id*. (listing cases).

In this case, the reservation of rights clause and termination clause both have qualifying language which dictates that if a participant is already "entitled" to receive benefits, any modification or termination of benefits will not apply to that participant. It is clear from this language that some benefits do become vested under the Plan. Defendants argue that benefits

10

become vested only after a claim is made for a particular medical service. Plaintiff argues that a right to medical benefits vests upon the determination that a participant is disabled. For purposes of Defendants' instant Motion, the Court finds that the reservation of rights and termination provisions are not facially unambiguous. Because the provisions are not facially unambiguous, the Court holds that Plaintiff has stated a claim. Further interpretation of the Plan and other extrinsic evidence is not proper at the motion to dismiss stage. Thus, Defendants' Motion relating to whether medical benefits have vested will be denied.

### **Discrimination Under ERISA**

Pursuant to Section 510 of ERISA, codified at 29 U.S.C. § 1140,

> [i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan

In this case, Plaintiff alleges that participants with disabilities were discriminated against when Defendants terminated medical benefits for all disabled participants. "Section 510 was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.[8] *Humes v. McDonnell Douglas Corp.*, 922 F. Supp. 229, 233 (E.D. Mo. 1996) (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988). While an employer has flexibility to amend or terminate a welfare benefit plan, "Section 510 counterbalances this flexibility by ensuring that employers do not 'circumvent the provision of promised benefits.'" *Inter-Modal Rail Employees Assoc. v. Atchison, Topeka & Santa Fe Railway Co.*, 520 U.S. 510, 515 (1997). "To establish a

---

[8]The Court notes at this juncture that the parties' dispute over Plaintiff's employment status will not be addressed by this Court. Consideration of this issue is not necessary for this Court's determination of whether Plaintiff has stated a claim of discrimination under Section 510 of ERISA.

11

prima facie case under ERISA § 510, a [participant] must demonstrate (1) prohibited [] conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the [participant] may become entitled." *Humes*, 922 F. Supp. at 233. Also, in order "to establish a prima facie case of deliberate interference with prospective benefits under § 510, a claimant must demonstrate a causal connection between the likelihood of future benefits and an adverse employment action." *Conley v. Pitney Bowes, Inc.*, 978 F. Supp. 892, 901 (E.D. Mo. 1997) (quoting *Kinkead v. Southwestern Bell Telephone Co.*, 49 F.3d 454, 456 (8th Cir. 1995)).

Plaintiff's Complaint states in a conclusory fashion that "Defendants' denial is discriminatory." Plaintiff's bare allegation that the termination of benefits was discriminatory is insufficient to sustain a cause of action. *See Davis v. Bemiston-Carondelet Corp.*, 2005 WL 2452540, at *5. Plaintiff fails to allege any causal connection between an interference with benefits and an adverse employment action or specific intent to discriminate among plan beneficiaries on grounds proscribed by Section 510. Plaintiff's Complaint relies entirely on the fact that the welfare plan was amended, affecting disabled employees. This Court holds that an "alteration or termination of a medical plan [cannot] alone sustain a section 510 claim." *See McGann v. H&H Music Co.*, 946 F.2d 401, 406 (5th Cir. 1991). The same argument was addressed in *McGann v. H&H Music Company*. In that case, plaintiff sued defendant alleging a violation of Section 510 when defendant reduced medical coverage for participants with the AIDs virus. When plaintiff alleged that Section 510 prohibits "discrimination in the alteration of an employee benefits plan that results in an identifiable employee or group of employees being treated differently from other employees," the court held that

> [Section 510] relates to discriminatory conduct directed against individuals, not to actions involving the plan in general. The problem is with the word 'discriminate.' An overly literal interpretation of this section would make illegal any partial termination, since such terminations obviously interfere with the

12

attainment of benefits by the terminated group, and, indeed, are expressly intended so to interfere.... This is not to say that a plan could not be discriminatorily modified, intentionally benefitting, or injuring, certain identified employees or a certain group of employees, but a partial termination cannot constitute discrimination per se. A termination that cuts along independently established lines--here separate divisions--and that has a readily apparent business justification, demonstrates no invidious intent

*McGann*, 946 F.2d at 406. Thus, this Court finds that Plaintiff has failed to adequately state a claim. Defendants' Motion, as it relates to Plaintiff's Section 510 discrimination claim, will be granted.

### **Monetary Relief Requested**

Plaintiff seeks relief under Count I, including among other things, (1) the refund of COBRA premiums and premiums for other replacement health insurance in effect since January 1, 2005, and (2) reimbursement of out-of-pocket health care costs which would have been covered by the Plans but for the discontinuation of health insurance benefits effective December 31, 2005. Defendants seek an Order striking Plaintiff's request for monetary relief, arguing that only equitable relief is available under ERISA. Pursuant to the provisions of ERISA, a participant may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" under 29 U.S.C. § 1132(a)(1)(B) and "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan" under 29 U.S.C. § 1132(a)(3).[9]

---

[9]Plaintiff's claim that "lost benefits and lost employer-paid premiums" are recoverable under 29 U.S.C. § 1132(g)(2) is unavailing. Section 1132(g)(2) applies only to actions brought "by a fiduciary." Plaintiff's makes no allegations in his Complaint that any of Defendants are "fiduciaries" as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

As a preliminary matter, the Court finds that this is not an action to recover benefits *under the terms of the plan* as required in an action under 29 U.S.C. § 1132(a)(1)(B). Indeed, Plaintiff has initiated this action specifically because, under the terms of the Plan as amended on January 1, 2005, Participant was no longer eligible to receive medical benefits. The Court finds that Plaintiff is "seeking to reform the Plan by obtaining a declaration that the purported [] amendment [is] void." *See Ross v. Rail Car Amer. Group Disability*, 285 F.3d 735, 740 (8th Cir. 2002) (plaintiff's attempt to declare plan amendment to be void is not authorized under 502(a)(1)(B)). Thus, 29 U.S.C. § 1132(a)(3) is the statutory provision governing the relief available to Plaintiff.

Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff may seek only "equitable" relief. Defendants argue that the monetary damages that Plaintiff seeks are unavailable under § 1132(a)(3). The law is well settled that recovery for ERISA claims brought under § 1132(a)(3) does not include compensatory or punitive damages. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002) (holding that the phrase "other appropriate equitable relief" in § 1132(a)(3) is limited to forms of relief typically available in equity); *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) (same). "Recovery is limited [] to 'classic' equitable remedies, such as injunctive, restitutionary, or mandamus relief, and does not extend to compensatory damages." *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1061 (8th Cir. 2006) (internal citations and quotations omitted).

Plaintiff argues that the damages sought are restitutionary. "However, not all relief falling under the rubric of restitution is available in equity. In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 212.

14

> Restitution can be equitable or compensatory, and the distinction lies in the origin of the award sought. Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him.

*Knieriem*, 434 F.3d at 1061 (internal citation omitted). "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 214. Here, Plaintiff admits that he is seeking damages to "make him whole."[10] Therefore, construing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff is seeking restitution damages that are compensatory in nature. Thus, based on *Great-West Life & Annuity* and *Knieriem*, these damages are not recoverable under § 1132(a)(3). *See Tennant v. Swor*, 2006 WL 887491, at *3 (E.D. Tex. Apr. 3, 2006) (although plaintiff's request for relief was framed as an "equitable remedy of reimbursement," the claim was dismissed because it was actually a "request for damages, which is not allowed by § 502(a)(3)"). Plaintiff's requests for (1) the refund of COBRA premiums and premiums for other replacement health insurance in effect since January 1, 2005, and (2) reimbursement of out-of-pocket health care costs which would have been covered by the Plans but for the discontinuation of health insurance benefits effective December 31, 2005 will be dismissed.

**Document Requests**

---

[10]Plaintiff cites *Delcastillo v. Odyssey Resource Management, Inc.* in support of his claim that medical expense reimbursement is available under ERISA. *See*, 431 F.3d 1124, 1131 (8th Cir. 2005). This Court finds *Delcastillo* inapposite. In that case, the Eighth Circuit remanded the case back to the district court because the district court had failed to explain the nature of the "special damages" awarded by the court. Moreover, when analyzing which ERISA provision the district court relied upon in awarding damages, the Eighth Circuit specifically reminded the district court that "only equitable relief, not money damages, may be awarded under § 1132(a)(3)." *Id*.

15

Defendants seek an Order dismissing Count II of Plaintiff's Complaint. In Count II, Plaintiff alleges that Defendants failed to respond to requests for information, and Plaintiff seeks the statutory penalty of $110 per day for this alleged failure. Accepting the allegations in the Complaint as true, Plaintiff's first request for information was dated February 1, 2005. According to 29 U.S.C. § 1024(b)(4),

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

29 U.S.C.A. § 1024(b)(4). The administrator has 30 days to respond to such requests. 29 U.S.C. § 1132(c)(1). Plaintiff alleges that Defendants did not respond to Plaintiff's requests until November 21, 2005, and even then, Defendants did not answer all the requests. Thus, because the time between the first request on February 1, 2005 and the partial response on November 21, 2005 was more than 30 days, this Court finds that Plaintiff has stated a claim for relief.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [doc. #20] is **GRANTED in part, and DENIED in part**. Defendants' Motion, as it relates to the vesting of medical benefits in Count I, is **DENIED**. Defendants' Motion, as it relates to discrimination under ERISA in Count I, is **GRANTED** and is **Dismissed**. Defendants' Motion, as it relates to Plaintiff's requests for monetary relief, is **GRANTED**. Plaintiff's requests for (1) the refund of COBRA premiums and premiums for other replacement health insurance in effect since January 1, 2005, and (2) reimbursement of out-of-pocket health care costs which would have been covered

by the Plans but for the discontinuation of health insurance benefits effective December 31, 2005 are **Dismissed**. Defendants' Motion, as it relates to Count II, is **DENIED**.

An appropriate Order of Dismissal will accompany this Order.

Dated this 6th day of June, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE