UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER HALBACH, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| Vs. ) | Case No. 4:05CV2399 ERW |
| ) | |
| GREAT-WEST LIFE & ANNUITY ) | |
| INSURANCE COMPANY, et al. ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court upon Plaintiffs' Motion to Compel [doc. #85] Defendants to respond to Plaintiffs' discovery requests.

### I.  BACKGROUND

Plaintiffs filed suit against Defendants alleging that Defendants discontinued their employee benefits in violation of ERISA and the ERISA plan's own terms, and in violation of Defendants' fiduciary duties to Plaintiffs. Plaintiffs now seek to compel Defendants response to discovery requests. Plaintiffs and Defendants disagree over the meaning of the terms of the plan, and on June 6, 2006, this Court ordered that extrinsic evidence should be considered in resolving ambiguity that existed in the plans terms.

Plaintiffs pursued discovery "seeking documentation of Defendants' interpretations of the pertinent plan terms, seeking information regarding whether or not Defendants actually amended the Plan, seeking information regarding whether such amendment was effectuated in accordance with the Plan's amendment procedure, and seeking legal opinions obtained by the Plan's fiduciaries on behalf of Plaintiffs and other similarly situated Plan participants." *Pl. Memo. in*

1

*Sup. Of Pl.'s Second Mot. to Compel*, 3. Specifically, Plaintiffs seek documents in response to "Request for Production No. 14," and "Interrogatory No. 8." Defendants disagree with Plaintiffs' description of the requested discovery material, and further assert that all material withheld by the Defendants is privileged, is confidential/proprietary, or is irrelevant to the issues in the case. *Def. Memo. in Opp. to Pl. Second Mot. To Compel*, 2.

## II. STANDARD

Generally, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Under Rule 37 "[a] party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . .." Fed. R. Civ. P. 37(a). The rule further provides that "application for an order to a party shall be made to the court in which the action is pending." *Id.* The Federal Rules provide that a party may withhold documents on a claim of privilege, but if a party does so they must "make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. Fed. R. Civ. Pro. 26(b)(5).

## III. DISCUSSION

### A. ATTORNEY-CLIENT PRIVILEGE

Defendants provided the Court with copies of the withheld or redacted materials for this Court's *in camera* review. Those materials listed under "Tab B" are documents over which Defendants assert the attorney-client privilege. Plaintiffs argue that the material is not protected,

as it is subject to the fiduciary exception to attorney client privilege. This exception is limited in scope, and requires a determination of whether the communications involved the employer as fiduciary.

The rules of privilege applicable in federal court are governed "by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed. R. Evid. 501. Proposed Rule of Evidence 503 is generally used as a starting point for any discussion of the federal common law rule of attorney-client privilege. *See In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) ("Proposed Federal Rule of Evidence 503, which is also known as Supreme Court Standard 503, provides a useful starting place for [the] discussion."). This rule states, in pertinent part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

*Id*. Under this general rule, the communications between Defendants and its attorneys would be privileged; to which Plaintiffs assert the fiduciary exception. The rationale for this exception is well-summarized by the fifth circuit: "when an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Wildbur v. Arco Chemical Co.*, 974 F.2d 631, 645 (5th Cir. 1992); *see also Riggs Nat. Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 714 (Del.Ch. 1976) ("The trustees here cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege."); *Geissal v. Moore Medical Corp.*, 192 F.R.D. 620, 624 (E.D.Mo., 2000) ("the beneficiary, not the plan

3

trustee, are the clients of the attorney who provides legal advice for the administration of the plan.). Another rationale that is commonly cited is that the plan administrator "cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries. *Becher v. Long Island Lighting Co.*, 129 F.3d 268, 272 (5th Cir. 1997); *see also Geissal*, 192 F.R.D. at 624 ("It is well established that an ERISA trustee or plan administrator, who administers the plan for the benefit of all of the beneficiaries, must 'disclose to plan beneficiaries all information regarding plan administration.'" (quoting *U.S. v. Mett*, 178 F.3d 1058, (9th Cir. 1999)). This fiduciary exception provides plan beneficiaries with access to otherwise confidential communications that are related to plan administration.

The basis for the parties dispute in the present case is whether the communications were involving plan administration or the employer's role as plan sponsor. As the court in *Geissal* recognized, "not all acts of the plan administrator which relate to the plan involve the administration of the plan." 192 F.R.D. at 624 (internal quotation omitted). Only those communications that involve plan administration are excepted from the attorney-client privilege. *Becher*, 129 F.3d at 272. There are two main areas of communication that are not included within this narrow exception. The first is "when an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries." *Geissal*, 192 F.R.D. at 624. This is a logical exception, as the trustee needs to be able to obtain legal advice regarding litigation against him. The second main area of communication that is not included within the fiduciary exception, is legal advice sought by the plan administrator for non-fiduciary functions. *Becher*, 129 F.3d at 272. The Supreme Court has held that "a company does not act in a fiduciary capacity when

4

deciding to amend or terminate a welfare benefits plan." *Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (internal citation omitted). The Court also held that "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.*

Both of these areas are at issue in the present case. Plaintiffs assert that the communications sought took place before there was any anticipation of litigation, and that no valid plan amendment occurred, and therefore any changes to plan benefits were a violation of the plan administrators fiduciary duty. *Pl. Memo. in Support of Pl. Second Mot. to Compel*, 6. Plaintiffs argument, and Defendants response, raise one of the ultimate issues in this case, whether Defendants altered the benefits under the plan in violation of the terms of the plan, or in the alternative, they divested benefits which violates ERISA. *Id.* (citing 29 U.S.C. § 1104(a)(1)).

### 1. COMMUNICATIONS REGARDING PLAN REDESIGN

The first category of communications Defendants seek to withhold on the basis of privilege are those relating to legal advice sought by the plan sponsor when it was contemplating a redesign of its benefits. *Def. Memo. in Opp. to Pl. Second Mot. to Compel*, 3. Plaintiffs argue that these are discoverable, because the Defendant was acting as plan administrator, for the benefit of the beneficiaries. Plaintiffs cite the decision in *Geissal* for support, which held that "pre-decisional advice and opinions of the subject counsel are not protected from discovery by the attorney work product doctrine." 192 F.R.D. at 625. However, this was legal advice relating to an individual's benefits, not legal advice relating to a change in the terms or benefits of the plan generally. *Id.* ("[T]he plan obtained a legal opinion from attorney Mlynarczyk before the decision to terminate [plaintiff]'s COBRA coverage was finally made, to determine whether [they] had a

sound legal basis for terminating COBRA coverage." (Internal quotations omitted)). The case at bar involves the plan administrator's decision to change the terms of the plan generally, not in relation to a specific beneficiary, the issue in the case at bar was not before the *Geissal* court.

The fiduciary exception, as the name aptly states, applies only to those functions in which the employer is acting as fiduciary, not as plan sponsor. *See Curtis-Wright Corp.*, 514 U.S. at 78; *see also Bennett v. Conrail Matched Savings Plan Administrative Committee*, 168 F.3d 671, 679 (3rd Cir. 1999) ("We have recognized. . . that ERISA permits employers to wear two hats, one as plan administrator, the other as plan sponsor." (Internal citations omitted)); *Izzarelli v. Rexene Products Co.*, 24 F.3d 1506, 1524-1525 (5th Cir. 1994) ("a company acts as fiduciary when administering plan, but not when deciding plan's terms"). Specifically, "[f]iduciary duties attach to actions of employers only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Bennett*, 168 F.3d 678; *see also Hughes Aircraft v. Jacobson*, 525 U.S. 432, 433 (1999) ("[W]ithout exception, plan sponsors who alter the terms of a plan do not fall within the category of fiduciaries."). Plaintiffs argue that, although normally, employers are entitled to change the terms of an ERISA plan, as plan sponsor, they are not allowed to do so in a manner that violates the terms of the plan itself, and if they do, they violate their fiduciary obligations. Support for this is found in an Eighth Circuit decision, which held although generally "[a]n employer may unilaterally modify or terminate health benefits absent the employer's contractual agreement to the contrary, the case turns on whether vested health benefits were contractually conferred in the Master agreement between [the parties]." *John Morrell &Co. v. United Food and Commercial Workers International Union, AFL-CIO*, 37 F.3d 1302, 1303-1304 (8th Cir. 1994). If the contractual agreement, the terms of the plan, provides that certain benefits are vested, the employer cannot

6

unilaterally amend those terms, and if they do so, they violate their fiduciary obligation to the beneficiaries. The Eighth Circuit emphasizes that an employer does not violate its fiduciary obligation as plan administrator, when as plan sponsor, they exercise their business judgment to modify non-vested welfare benefits. *Id.* at 1398.

This Court does not think it is appropriate or necessary to decide the ultimate issue of whether the amendments to the plan were made in accordance with its terms, or whether they effected vested rights, in a motion to compel.[1] Rather, this Court holds that Defendants are protected by the attorney client privilege regardless of whether Defendants breached their fiduciary duty in withdrawing benefits. The attorney client privilege is an important staple of our judicial system and therefore it is appropriate to limit, rather than expand exceptions to that privilege. *U.S. v. Doe*, 162 F.3d at 556 ("[T]he attorney-client privilege is,. . . perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system."); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1998). Generally, when a plan sponsor seeks legal advice regarding future amendments to the plan, they are not acting as a fiduciary for the benefit of the beneficiaries. *See Hudson v. General Dynamics*, 73 F.Supp.2d 201, 203 (D. Conn. 1999).[2] As the Supreme Court noted in *Upjohn Co.*, the

---

[1]This Court's decision is not in conflict with the Eighth Circuit decision in *John Morrell & Co.*, 37 F.3d 1302. It may ultimately be decided that Defendants altered the terms of the plan in violation of their fiduciary duty to Plaintiffs, by altering the terms in violation of the contractual agreement, or because the benefits were vested at the time of amendment, which is what the Eighth Circuit held in *John Morrell & Co*. *Id.* This Court's position is that a Motion to Compel is not the correct time to make this determination, therefore the Court adopts the approach used by the Northern District of California, in deciding the question of attorney client privilege. The Eighth Circuit's decision did not address the fiduciary exception to attorney client privilege, and therefore does not provide guidance on this question. *Id.*

[2]"The content of these documents reveals that the advice was not rendered for the benefit of the plan, its beneficiaries, or as a matter of plan administration involving the defendant's role as the beneficiaries' fiduciary, but rather for the benefit of the defendant seeking to protect itself

7

purpose of the attorney client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." 449 U.S. at 389.

Taking into account the important role of attorney client privilege, the Northern District of California recognized the difficulty of trying to determine whether particular advice was in relation to actions as plan fiduciary or as plan sponsor, and articulated a different test for determining whether the fiduciary exception applied. *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 608-609 (N.D.Cal., 2000). The court held "that while generally, the fiduciary exception applies to matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains to protect itself from liability." *Id.* at 609. The court further found that "the use of a fiduciary-nonfiduciary activity distinction as the touchstone for a privilege inquiry in discovery is awkward at best, simply because the existence of a fiduciary duty may be an ultimate issue that simply cannot be resolved in the course of discovery disputes." *Id.* When Defendants in the present case obtained legal advice regarding changes to the plan, the Defendant was not acting for the benefit of the beneficiaries, but rather as plan sponsor. The fact that they may have breached a fiduciary duty by amending the plan in a way that was contrary to the terms of the plan itself, is an ultimate issue that is not appropriately decided in a motion to compel. Rather this Court sees the actions Defendants took in consulting counsel as a way to make changes to the terms of the plan in a manner that was legal, which warrants the application of the attorney-client privilege. *Id.* ([W]here a fiduciary seeks legal advice for her own protection, the core purposes of the attorney-client privilege are seriously implicated and should trump the

---

from potential liability in connection with its consideration of future plan amendments or enhancements, which constitute non-fiduciary matters. Under these circumstances, the defendant enjoys a confidential attorney-client relationship." *Id.*

beneficiaries rights to disclosure."). The Defendants were protecting themselves from unlawful action, which should be encouraged. By excepting certain communications from the privilege employers may be discouraged from seeking legal advice regarding the complicated area of law created by ERISA. *Id.* ([A] well-defined attorney-client privilege encourages a trustee to seek advice about its potential liability and therefore advances important policy interests."). Therefore those documents regarding amendments to the plan that took place before any complaints occurred are protected by the attorney-client privilege.

### 2. COMMUNICATIONS REGARDING LTD CLAIMANTS

The second set of communications that Defendants seek to withhold on the basis of privilege is those relating to legal advice sought in response to Long-term Disability (LTD) claimants; these occurred after benefit changes were announced. *Def. Memo. in Opp. to Pl. Second Mot. to Compel*, 3(Defendants second category of alleged privileged information). The *Geissal* court analyzed when legal advice is obtained in anticipation of litigation. 192 F.R.D. 620. They found that although, any time a plan beneficiary is denied benefits there is a potential for litigation, the "prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege." *Id.* at 625. Therefore any communications or work-product that was the basis for the plan administrator's decision is not subject to the attorney-client privilege, rather, only once there is a threat of litigation. *Id*. In the *Geissal* case the court held that after the decision was made, and the disappointed beneficiary obtained counsel who "impliedly and expressly suggested to the plan's administrator and to subject counsel that litigation would result if the plan did not retract the termination of . . . coverage," the trustees interests were separate from the interests of the beneficiary and therefore the fiduciary exception was inapplicable. *Id.*

9

Although the *Geissal* case is distinguishable, as the court held that communications after an explicit threat of litigation were not included in the fiduciary exception, and there is no explicit threat in the letters sent Defendants in this case, the *Geissal* case is persuasive. 192 F.R.D. at 624. In the present case the Plaintiffs had retained counsel, and were complaining about the change in benefits under the plan. It is reasonable that Defendants would have anticipated litigation after receiving letters from attorneys on behalf of disappointed beneficiaries. Therefore the attorney-client privilege protects disclosure of communications obtained by the plan sponsor when contemplating a redesign of the plan's terms.

### 3. COMMUNICATIONS REGARDING PRESENT DISCOVERY REQUESTS

The third set of communications Defendants seek to protect are those attorney-client communications generated during the course of this litigation, while gathering documents to produce to Plaintiffs. These documents are clearly not subject to the fiduciary exception, and do not have to be produced.

### B. CONFIDENTIAL/PROPRIETARY INFORMATION

Those documents provided by Defendants under "Tab C" are listed as being confidential and proprietary, and were not produced by Defendants. Defendants argue that the material in Tab C relates to the plan sponsor's other benefits programs. *Def. Memo. in Opp. to Pl. Second Mot. to Compel*, 3. Although Defendants assert that these documents are protected, they do not provide any support for this conclusion. Their brief on this motion is focused entirely on the attorney-client privilege doctrine, without discussion of why they are not required to produce confidential/proprietary information. The Plaintiffs have agreed, in accordance with the federal rules, to enter into a protective order, and this Court can find no reason why this is not the

appropriate course of action. Fed. R. Civ. P. 26(c). Therefore, Defendants are required to disclose the contents of Tab C, after submitting a protective order to be approved by this Court.

## V. CONCLUSION

Plaintiffs' Motion to Compel will be granted in part and denied in part. Those communications, listed by the Defendants as "Tab B," those involving legal advice sought by the plan sponsor when it was contemplating a redesign of its benefits plan, legal advice sought in response to complaints of LTD claimants once the benefit changes were announced, and work-product and attorney communication created during the pendency of this lawsuit for purposes of gathering documents for production, are protected by the attorney-client privilege and Plaintiffs' motion to compel those documents is denied. Those documents listed by Defendants as being confidential/propriety are not protected by privilege and therefore Plaintiffs' motion to compel those documents is granted, with the condition that Plaintiffs enter into a protective order with Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Second Motion to Compel [doc. #85] is **GRANTED** as to documents under "Tab C" and **DENIED** as to the materials in "Tab B." Defendants shall submit a proposed protective order addressing those materials contained in "Tab C" for approval by this Court, no later than November 27, 2006. Within 10 days of this Courts approval of the protective order Defendants shall produce those documents in "Tab C."

Dated this 21st Day of November, 2006.

*E. Richard Webber*
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE