UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HEATHER HALBACH, et al.,  )
 )
    Plaintiff(s),  )
 )
vs.  )    Case No. 4:05CV02399 ERW
 )
GREAT-WEST LIFE & ANNUITY  )
INSURANCE CO., et al.,  )
    Defendant(s).  )

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion to Certify Class and Name Class Representatives [doc. #76].

## I. FACTUAL BACKGROUND

Plaintiff Halbach is the personal representative of the estate of John Lewis. In the past, Mr. Lewis, a plan participant,[1] was employed by Defendant Great-West Life & Annuity Company ("Great-West"). Plaintiff Schield is a current plan participant, and receives long term disability benefits. Great-West is the plan sponsor and claims administrator of Defendants Great-West Life & Annuity Insurance Company Employee Welfare Benefit Plan, Health and Welfare Plan of

---

[1]Pursuant to the provisions of ERISA, a "participant" is:
  any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
29 U.S.C. § 1002(7).

1

Great-West Life and Annuity Company, Great-West Life & Annuity Insurance Company Flexible Benefits Plan and Great-West Life Staff & Agents' Plan ("Plans").[2]

Both Mr. Lewis and Plaintiff Schield were previously employed by Great-west, before becoming disabled. Mr. Lewis suffered from muscular dystrophy and was approved for long-term disability leave on April 19, 2004. He was eligible and received long-term disability benefits until his death on March 6, 2005. Plaintiff Schield is also disabled,[3] and was approved for long-term disability benefits in 1996. Plaintiff Schield continues to receive long-term disability benefits through the present date.

---

[2]These plans are "employee welfare benefit plans." There are two types of employee benefit plans under ERISA, welfare plans and pension plans. *See* 29 U.S.C. § 1002(3). An "employee pension benefit plan" is:
> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program-
> (i) provides retirement income to employees, or
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C.A. § 1002(2). As distinguished from an "employee pension benefit plan," an "employee welfare benefit plan" (or "welfare plan") is:
> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

[3]The Court has not been advised of her specific disability.

From April 19, 2004 through December 31, 2004, Mr. Lewis, Plaintiff Schield and other disability benefit recipients received health care benefits pursuant to the Plans on terms equivalent to active, non-disabled employees. On November 8, 2004, Defendants mailed a letter to all plan participants giving notice that medical benefits would no longer be continued for current or future long term disability claimants after December 31, 2004. Mr. Lewis and Plaintiff Schield were no longer qualified as an eligible participant under the Plan and were therefore informed that under the Federal Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), they had the option of continuing Plan coverage after their coverage ended, at higher COBRA rates.

## II. PROCEDURAL HISTORY

Plaintiff Halbach filed suit against Defendants alleging that the Defendants amended their welfare benefit plan in violation of ERISA, and in violation of the Plans' terms by denying benefits under Defendants' health insurance plans (Count I). Plaintiff Halbach further alleged violations of ERISA for failure to provide information and documents in accordance with 29 U.S.C. §§ 1024(b)(4), 1133, and 1132(c)(1) (Count II). Defendants filed a motion to dismiss on February 22, 2006, which was granted in part and denied in part. This Court's June 6, 2006 order granted Defendants' Motion to dismiss Count I as it relates to Plaintiff's requests for monetary relief and as far as it alleged discrimination, but denied the motion as to Count I as it related to the vesting of benefits. The Court denied the motion to dismiss as to Count II. Following this Court's order, Plaintiff Halbach filed an Amended Complaint which was accepted for filing on June 28, 2006, and subsequently, Plaintiff Halbach filed a Second Amended Complaint on October 2, 2006, adding Plaintiff Barbara Schield as a named Plaintiff. Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint on October 23, 2006, that motion is currently pending before this Court. Also pending before this Court is Plaintiffs' Motion for Class Certification

[doc. #76]. This opinion addresses only Plaintiffs' Motion for Class Certification. The Court held an in Court hearing on the motion for class certification on February 2, 2007.

**III. LEGAL STANDARD**

The Federal Rules of Civil Procedure provide the standard for certifying an action as a class action. The rule states that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). After a determination has been made that all of the prerequisites under Rule 23(a) have been met, then the court must determine whether a class action is maintainable under one of the provisions of Rule 23(b). Rule 23(b) states:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b). The Supreme Court has held that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The Eighth Circuit further held that "while class stipulations by the parties may be helpful, they are not

4

complete substitutes for 'rigorous analysis'. . .. Inquiry should be made by the trial court prior to certification, even if the named parties have stipulated to the existence of a class." *Harvey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).

In determining whether to certify a class action, the district court is given wide discretion. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980). The Eighth Circuit has also held that in determining the propriety of class certification, "[t]he District Court must have before it sufficient material to determine the nature of the allegations, and rule on compliance with the Rule's requirements[,]" such a determination "can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (internal citations and alterations omitted).

## IV. DISCUSSION

Plaintiffs seeks to certify a class based on two named class representatives, Plaintiff Heather Halbach, and Plaintiff Barbara Schield, to represent the class of all Defendants' disability benefits recipients since December 31, 2004. The Court will address each prerequisite with regards to each Plaintiff, and then discuss whether one of the four alternatives under 23(b) is satisfied. Although the parties are in agreement that the first three requirements are met, it is still necessary for the court to discuss each, to ensure that class certification is appropriate. *Hervey*, 787 F.2d at 1227.

### A. Federal Rule 23(a)

#### 1. Numerosity

The numerosity requirement provides that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no numerical requirement for satisfying the numerosity requirement. *Morgan v. United Parcel Service of America*, 169 F.R.D.

349, 355 (E.D.Mo. 1996) ("There are no arbitrary rules regarding the size of the class necessary to meet the numerosity requirement."); *see also Paxton v. Union National Bank*, 688 F.2d 552, 559 (8th Cir. 1982) ("No arbitrary rules regarding the necessary size of classes have been established."). Rather, the plaintiff must show that joinder would be impracticable. "Impracticable does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class." *Morgan*, 169 F.R.D. at 355. Furthermore, "[g]eographical dispersion is a factor that may establish impracticability even in a relatively small putative class." *Id.* In order to meet this requirement it is not necessary to specify an exact number or to prove the identity of each class member, rather "the plaintiffs must only show a reasonable estimate of the number of class members." *Id.*

The Plaintiffs seek to certify a class consisting of at least 150 class members disbursed throughout 24 states. This information is taken from a spreadsheet provided by Defendants, and represents individuals on long-term disability who received a change in health care coverage after becoming disabled. The one hundred and fifty number does not include those who became disabled after December 31, 2004; Plaintiffs define the class to include those who became disabled after that date, as they should have received health care benefits under the old plan provision, which would still apply to those claimants if the plan was never properly amended.[4] Looking only to the 150 putative class members, which is clearly a reasonable estimate of the number of class members, this Court finds that the numerosity requirement has been met. In this case, not only is

---

[4]The Court agrees that Plaintiffs correctly describe the class as all disability benefit recipients, not only those who were on long-term disability at the time of the attempted amendment. In the event this Court finds the Plan amendment to have been ineffective, the old plan terms would govern, until a valid amendment is made.

150 plaintiffs significant, and joinder would clearly be challenging, but the geographic dispersion is also great. The putative class members are located in at least 24 different states.

### 2. Commonality and Typicality

The second requirement is commonality; there must be "question of law or fact common to the class," and the third requirement is typicality; "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2) & (3). These two requirements tend to merge as "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest*, 457 U.S. at 158 n. 13. However, the Eighth Circuit has addressed them as two separate and distinct requirements. Commonality is satisfied if "a common issue pervades all the class members' claims." *Morgan*, 169 F.R.D. at 355. "Typicality requires a showing that the claims of the class representatives are typical of the claims of the proposed class." *Id.*

In the case at bar, Plaintiffs argue that the common question is whether Defendants amendment of the plan to disallow long term disability recipients from receiving health care benefits at employee rates, divested plan participants of vested benefits. Furthermore, all claims require the interpretation of the same plan terms, and assert the same legal theory. In support of their contention, Plaintiffs argue that each of the 150 putative class members received the same letter informing them of the discontinuation of benefits. Both Plaintiffs Halbach and Schield are asserting that Defendants improperly discontinued health care benefits, in violation of the terms of the plan, and in violation of ERISA. As the Northern District of Illinois stated, this is not a difficult standard, and "one issue of fact or law common to all class members will suffice."

*Anderson v. Cornejo*, 199 F.R.D. 228, 239 (N.D.Ill. 2000). The commonality requirement has been met in this case; the named Plaintiffs raise questions regarding the validity of the amendment under ERISA, which is a common question of law and both the named plaintiffs and the putative class are challenging the same action. As for the typicality requirement, both Plaintiff Schield, and Mr. Lewis, on who's behalf Plaintiff Halbach is suing, are seeking recourse for a loss of health care benefits. As the Eighth Circuit sated, "this requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class step from a single event or stem from a single legal theory." *Paxton*, 688 F.2d at 561-62. All of the putative class members' claims stem from the Defendants' amendment of the plan, which ceased health care benefits to long-term disability claimants. Therefore, both the commonality and typicality requirements are met with regards to Plaintiffs Halbach and Schield.

### 3. Adequacy of Representation

The last requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class. This requirement encompasses two distinct factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *U.S. Fidelity & Guaranty Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978); *see also Paxton*, 688 F.2d at 562-63 ("The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.").

The first requirement, is easily satisfied, and the Court will address that issue first. Plaintiffs' counsel have consistently responded to the Court's request for information, oral arguments, and briefing throughout the litigation. Furthermore, Plaintiffs' counsel stated, in a

hearing before this Court, that they would cover the expenses of litigation. Additionally, "[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action." *Morgan*, 169 F.R.D. at 357. Defendants do not challenge the adequacy of Plaintiffs' counsel and this Court finds no inadequacy with Plaintiffs' counsel, therefore Plaintiffs have satisfied the first factor in establishing adequacy of representation.

The second element of adequacy of representation, raises a number of more complex issues. In order to determine the adequacy of Plaintiffs Halbach and Schield,

> [t]he Court must inquire whether the proposed representatives: 1) are able to act as fiduciaries in protecting the class interests; 2) hold a substantial stake in the controversy; 3) possess resources adequate for the prosecution of the claim; 4) are motivated for reasons unrelated to the cause itself; and 5) have any interest conflicting with the class interest.

*TBK Partners v. Chomeau*, 104 F.R.D. 127, 131-32 (E.D.Mo. 1985). For both Plaintiffs Halbach and Schield the question of adequate resources is not an issue, as the Plaintiffs' counsel have provided evidence of the contingency fee arrangement in this case, which places the responsibility for costs on the Plaintiffs' counsel. The Court will address the remaining questions individually for each named Plaintiff.

### i. Plaintiff Halbach[5]

---

[5]In addressing the adequacy of Plaintiff Halbach to represent the class in this case, Defendants reference their Motion to Dismiss, where they challenge the ability of Plaintiffs to receive monetary equitable relief. Although this opinion is only intended to address the question of class certification, the Court will look at the cases cited by Defendants in their Motion to Dismiss, in so far as they relate to the ability of Plaintiff Halbach to recover monetary equitable relief from Defendants. Furthermore, the Court notes that while a class certification determination is not based on the merits, the question of standing must be determined in every case, before the case may move forward, as it is a question of the Court's jurisdiction. Therefore, the Court must address the question of available relief in some detail to determine whether Plaintiff Halbach has standing to sue.

Plaintiff Halbach is serving as the representative of Mr. Lewis' estate, and is one of the named Plaintiffs who seeks certification as a class representative. Defendants argue that Ms. Halbach is inadequate for a number of reasons. First, they argue that Ms. Halbach lacks standing to bring the present suit. Second, Defendants argue that Ms. Halbach has a conflict of interest between the interests of the class and the interests of the beneficiaries of Mr. Lewis' estate. As the first argument is dispositive of the question of Plaintiff Halbach's adequacy, it is not necessary for the Court to reach the Defendants' second argument.

Defendants first argument[6] questions whether Plaintiff Halbach is an adequate representative because she lacks standing to sue. Defendants argue that the equitable relief sought, specific performance, equitable tracing of overpayments, and equitable restitution of overpayments, are merely compensatory damages which this Court ruled were unavailable under ERISA. All additional relief sought under the complaint is for future injunctive relief, which is unavailable to Plaintiff Halbach because Mr. Lewis, whom Plaintiff Halbach represents, cannot benefit from injunctive relief, as he is deceased.

A named plaintiff "is not a proper representative of the class where he himself lacks standing to pursue the claim." *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998); *see also In re Milk products Antitrust Litigation*, 195 F.3d 430, 436 (8th Cir. 1999) ("Because Rainy Lake's individual claim was properly dismissed for lack of standing, it was not a member of the

---

[6]Defendants briefly assert that Plaintiff Halbach is not an adequate class representative because she is not actually a member of the class she seeks to represent. As a general rule, "the named plaintiff must be a member of the class she seeks to represent." *Sample v. Monsanto Co.*, 218 F.R.D. 644, 648 (E.D.Mo. 2003). However, as Plaintiffs correctly assert, when an administrator of a decedent's estate, pursues the decedent's claim, they stand in the shoes of the decedent. *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 248 n. 7 (3rd Cir. 2002). Therefore, Plaintiff Halbach is able to assert the claims of Mr. Lewis, as she stands in his shoes as administrator of his estate.

10

class and could not represent the class."). "To establish standing sufficient to meet the requirements of Article III of the United States Constitution, a party must establish three elements: (1) the party must have suffered an injury in fact, consisting of an invasion of a legally protected interest. . .; (2) there must be a causal connection between the injury and the conduct complained of, where the injury is fairly traceable to the challenged action; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Hall*, 140 F.3d at 1195. The first two standing requirements are not challenged by Defendants, and are easily met. Mr. Lewis suffered an injury, the termination of health insurance benefits, and that injury was caused by Defendants' action in amending the plan. It is the third requirement that the Defendants challenge; whether this Court can redress the injury, or more specifically whether any relief is available other than future injunctive relief that would be mooted by Mr. Lewis' death.

The Court agrees with the Defendant, that if the only relief available is future injunctive relief, then Plaintiff Halbach lacks standing to sue on behalf of Mr. Lewis. *See Harrow*, 279 F.3d at 249 (Holding that the plaintiff's declaratory and injunctive relief claims were moot because of the plaintiff's death.). However, the court in *Harrow* specifically held that "plaintiff's damage claim is not extinguished by Mr. Harrow's death." *Id.* This leads the Court to consider whether the "equitable" remedies allowed for under ERISA, include the damages claims in Plaintiffs' Second Amended Complaint. ERISA states that

> A civil action may be brought (1) by a participant or beneficiary. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . ..

11

29 U.S.C. § 1132(a)(1) & (3) (emphasis added). This Court ruled on July 6, 2006, that Plaintiffs action was not an action to recover benefits under the terms of the plan, and therefore the appropriate statutory provision governing the relief available to Plaintiffs is 29 U.S.C. § 1132(a)(3). The Court further held that damages are not available under § 29 U.S.C. § 1132(a)(3), and held that "Plaintiff's requests for (1) the refund of COBRA premiums and premiums for other replacement health insurance in effect since January 1, 2005, and (2) reimbursement of out-of-pocket health care costs which would have been covered by the Plans but for the discontinuation of health insurance benefits effective December 31, 2005 will be dismissed." Plaintiffs subsequently amended their complaint to request the reimbursement of COBRA premiums and out-of-pocket health care costs, but this time through equitable means. *Pl. Second Amended Compl.*, p. 10. (The prayer for relief requests the Court to order "specific performance through return of checks for benefit overpayments by Lewis, Schield and the class and, if return of checks is not possible, equitable tracing, and equitable restitution of overpayments remitted by Lewis, Schield and the class members to the Plans. . ..").

Plaintiffs clearly seek restitution of overpayments, that were the result of the alleged unlawful amendment to the Plan. However, the Supreme Court has made clear that not all claims for restitution are equitable. *Serboff v. Mid Atlantic Medical Services, Inc.*, 126 S.Ct. 1896, 1874 (2006). "To decide whether the restitutionary relief sought. . . was equitable or legal, we examined cases and secondary legal materials to determine if the relief would have been equitable 'in the days of the divided bench.'" *Id.* (citing *Great-West Life & annuity Co. v. Knudson*, 534 U.S. 204, 212 (2002) (alterations added)). The key distinction the Supreme Court found was that "a feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on particular funds or property in the defendants' possession." *Id.* The Court

12

further distinguishes legal restitution from equitable restitution by looking at whether the plaintiff seeks the funds from the defendants' assets generally, or from a specifically identified fund. *Id.*

In an opinion by the Eighth Circuit, upholding this Court's opinion, the court found that a former participant who was seeking restitution of medical bills that accumulated following the wrongful termination of COBRA coverage, was not "other equitable relief" within the meaning of ERISA. *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 595-96 (8th Cir. 2005). "In determining whether the nature of the monetary relief sought is equitable or legal, we ask whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant, and whether the money sought is specifically identifiable as 'belonging in good conscience to the plaintiff' and can 'clearly be traced to particular funds or property in defendant's possession.'" *Id.* at 596-97 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). The language used by the Eighth Circuit clearly requires that specific funds be identifiable in a specific account. *Id.* at 597 ("Specific funds are traceable when one party overpays and sues under ERISA to recover the specific amount that was overpaid into a particular account."). This construction by the Eighth Circuit is based in large part on the Supreme Court's decision in *Great-West*; in that case the Court stated that "restitution is a legal remedy when ordered in a case at law and an equitable remedy when ordered in an equity case, and whether it is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." 534 U.S. at 213.

Plaintiffs assert that the specific fund is the Great-West Life Insurance & Annuity Insurance Company Employee Welfare Benefit Plan Trust. However, the Court does not believe this reference is sufficient to support the equitable remedy of restitution. The underlying cause of action is a breach of the contractual agreement provided by the plan, or in the alternative a breach

13

of the plan administrator's fiduciary duty. These causes of action are legal in nature, and therefore any restitution is based in law not in equity. Furthermore, the sums that Plaintiffs seek to have reimbursed are calculated based on the amount of the overpayments long-term disability claimants made as a result of the allegedly illegal plan amendment. The focus is on the loss to Plaintiffs, not on the gain to the Defendants. As was true in *Calhoon*, the Plaintiffs are seeking restitution of overpayments made to the Defendants, rather than seeking the restitution of a specific sum of money in a specific account. 400 F.3d at 598 ("The Calhoons seek damages in the amount of the medical bills and costs that they accumulated when they lost COBRA coverage."). Plaintiffs attempt to distinguish the case at bar by pointing to the Defendants account into which the Plaintiffs overpayments were made. However, the Court does not believe, even if such an identification could be made, that such a ruling is appropriate in this case. The restitution sought is legal in nature, and not equitable, and therefore cannot be recovered under ERISA, 29 U.S.C. § § 1132(a)(3)(B).

As Plaintiffs cannot recover past overpayments under ERISA, Plaintiff Halbach is not an adequate class representative. The only relief remaining is declaratory and injunctive, and can be of no effect to Mr. Lewis. Therefore this Court lacks jurisdiction to adjudicate Plaintiff Halbach's claims under Count I of the Second Amended Complaint.

### iii. Plaintiff Schield

Defendants also assert that Plaintiff Schield is not an adequate class representative, but for different reasons. Defendants assert that "Schield should not be allowed to represent the putative class because her very presence [in this suit] is the fruit of prohibited communications." *Def. Memo. in Opp. to Pl. Mot. for Class Certification*, p. 14. Plaintiffs disagree that any improper action occurred in securing Ms. Schield as a potential class representative and as a client of

Plaintiffs' counsel (Mr. Potashnick). Following a confusing series of events, this Court entered a protective order on August 22, 2006, prohibiting Plaintiffs' counsel from communicating with putative class members. On August 3, 2006, Plaintiffs placed an advertisement in two Denver newspapers seeking information regarding the amendment to the Great West long-term disability plan, which ceased health-care benefits to disabled employees. Specifically Plaintiffs were seeking documents calculated to show liability and class-wide treatment. As a result of this advertisement Plaintiff Schield called Plaintiffs' Counsel and professed an interest in a lawsuit against Great-West for a loss of health insurance benefits. According to Plaintiff Schield's deposition testimony, she asked Plaintiffs' counsel to represent her at the time of the initial telephone call. This telephone call took place prior to this Court entering the protective order.

Defendants main argument[7] is that at the time of the Court's August 22, 2006 protective order, Ms. Schield's was a member of the putative class, and therefore any further communication with her by Plaintiffs' counsel constituted a violation of this Court's order. It is true that this Court ruled that no future communications could occur with putative class members without prior approval from the Court. However, Ms. Schield was already a client of Mr. Potashnick at the time this order was entered. Furthermore, Defendants did not object to Plaintiffs' filing of a Second Amended Complaint which added Ms. Schield as a named Plaintiff. Any objection Defendants had to the addition of Ms. Schield would have been appropriately raised at that time.

---

[7]Defendants also argue that the advertisement was improper and that the letter sent to individuals who showed an interest in the advertisement was inaccurate. The Court does not find these issues to be material. The conversation that took place between Mr. Potashnick and Ms. Schield occurred before this Court entered its protective order, and furthermore, Defendants are unable to show that Plaintiffs' counsel violated any ethical rules in obtaining Ms. Schield as a client.

Even if Plaintiffs' counsel had acted unethically in obtaining Ms. Schield as a client, Defendants have failed to cite to any case law which supports the conclusion that because a class representative is improperly solicited, they are barred from acting as class representative. The Seventh Circuit specifically addressed the question of attorney misconduct in soliciting named plaintiffs in a class action and held that "only the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status." *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972). This Court agrees with the approach taken by the seventh circuit. In the event that class counsel does act improperly, "[t]he ordinary remedy is disciplinary action against the lawyer and remedial notice to class members[,]" not denial of class certification. *Id*. Those cases which the Seventh Circuit noted had denied class certification on the basis of lawyer misconduct, involved serious misconduct, and in one case the other elements of Rule 23 had not been met. *Id.* at 931-32 ("We have found only two cases where a district court denied class status to plaintiffs whose attorneys were guilty of misconduct. . .. In both cases the misconduct was serious and there were other circumstances pointing to denial of class status."). Plaintiffs' counsel in this case have presented sufficient evidence, both through their briefing and in arguments before this Court, that they acted in good faith to solicit information from plan participants, that they had not received from Defendants through the discovery process. Furthermore, before seeking to add Plaintiff Schield as a named Plaintiff, Plaintiffs' Counsel sought guidance from the Missouri Ethics Board to ensure that they had not violated any ethical rules. Such action by the Plaintiffs' counsel shows they were acting in good faith, and that any misconduct that may have occurred is not sufficient to deny certification of the class, or to disqualify Plaintiff Schield from acting as class representative.

Plaintiff Schield is in adequate class representative in all other respects. Defendants have presented no evidence that Plaintiff Schield is not able to act as a fiduciary in protecting the class interests and she has an interest in the outcome as she is a long term disability claimant who is seeking the reinstatement of health care benefits at employee rates. *TBK Partners v. Chomeau*, 104 F.R.D. at 131-32. The requirement that she possess adequate resources is met, as Plaintiffs' counsel has testified before the court that they are fronting all costs of litigation, and in the event the case is unsuccessful, the class representative will owe nothing. *Id.* Lastly, Plaintiff Schield does not have any personal interest which conflicts with a class interest, and she is eager to prosecute the claim, not for the sake of prosecution, but rather to renew her health care benefits. *Id.* Plaintiff Schield is an appropriate class representative and may serve as the named plaintiff in this action.

### B. Rule 23(b)

Once the four prerequisites of Rule 23(a) have been met, the Plaintiff must show that a class action is maintainable under one of the four provisions of Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiffs assert that all four of the possibilities under Rule 23(b) are satisfied, where as Defendants assert that none of them are satisfied. The Court does not believe it is necessary to go through each of the four possibilities, as addressing the most favorable one will be dispositive.

Rule 23(b)(2) states that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition. . . (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The Eighth Circuit stated in *DeBoer v. Mellon Mortgage Co.*, that "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been

requested, the action usually should be allowed to proceed under subdivision (b)(2)." 64 F.3d 1171 (8th Cir. 1995) (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1775 (1986)); *see also Smith v. United HealthCare Services, Inc.*, 2002 U.S. Dist. Lexis 2140, at *14-15 (D. Minn. 2002) ("The Eighth Circuit has cited with approval Wright and Miller's statement that if the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2).").

Defendants raise the argument that although the class could be certified under Rule 23(b), it is unnecessary and therefore this Court should use its discretion to deny class certification. Specifically, Defendants argue that if the only relief sought is injunctive and declaratory relief, then any relief granted will benefit all the members of the proposed class, and therefore class certification is unnecessary. Although the Defendant correctly asserts that the only relief remaining is injunctive and declaratory, this alone is not sufficient to prevent certification under Rule 23(b)(2). The Court agrees with a number of other courts which have found that there is no "necessity" requirement included in Rule 23(b)(2) certification. *See Reproductive Health Services v. Webster*, 662 F.Supp. 407, 412 (W.D. Mo. 1987) ("This Court disagrees with the defendant's argument that class certification should be denied where the only relief sought is declaratory and injunctive in nature and would automatically inure to the benefit of those similarly situated with the plaintiff. There is no language in Rule 23(b)(2), as there is in Rule 23(b)(3), that requires the Court to consider the *necessity* for a class action." (Emphasis in original)). Rather, it is within the discretion of this Court to grant class certification if the prerequisites of Rule 23(a) are met, and injunctive or declaratory relief is requested.

It is clear in the case at bar that all the prerequisites of Rule 23(a) have been met, as discussed above, and that Plaintiffs are seeking injunctive and declaratory relief on behalf of all putative class members. Therefore certification of the class under Rule 23(b)(2) is appropriate. The Court also sees a benefit in certifying the action as a class action, as it will ensure that all current long-term disability benefit recipients receive the health care benefits at employee rates, in the event this Court finds in favor of Plaintiffs.

**V. CONCLUSION**

This Court grants Plaintiffs' motion for class certification, and certifies the class of "all Defendants' disability benefits recipients since December 31, 2004." Plaintiff Heather Halbach is not named as a class representative, however Plaintiff Barbara Schield is named as class representative.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Certify Class and Name Class Representatives [doc. #76] is **GRANTED**. Plaintiff Barbara Schield is named as class representative of a class consisting of all Defendants' disability benefits recipients since December 31, 2004.

Dated this 2nd Day of April, 2007.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE