UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER HALBACH, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV02399-ERW |
| ) | |
| GREAT-WEST LIFE & ANNUITY ) | |
| INSURANCE CO., et al., ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs Motion to Exclude Testimony of Mark Johnson and Strike his Report [doc. #128].

**I. BACKGROUND**

Plaintiffs filed suit against Defendants alleging that Defendants discontinued their employee benefits in violation of the Employee Retirement Income Security Act ("ERISA") and the ERISA plan's own terms, and in violation of Defendants' fiduciary duties to Plaintiffs. Plaintiffs and Defendants disagree over the meaning of the terms of the plan, and on June 6, 2006, this Court ordered that extrinsic evidence should be considered in resolving the ambiguity that existed in the plan's terms. The parties are currently pursuing discovery.

In addressing the ambiguity, Defendants seek to admit expert testimony regarding the general usage of the terms at issue in the plan documents. Plaintiffs do not believe that the interpretation of the plan terms is an appropriate subject for expert testimony, and therefore seek to exclude the testimony of Defendants' expert, Mark Johnson, and strike his expert report. The Court will now address the admissibility of Mr. Johnson's testimony.

1

## II. STANDARD OF REVIEW

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2006). The rule states three requirements in order for evidence to be admissible, first the evidence must be useful to the fact finder in deciding the ultimate issue of fact, second, the witness must be qualified to assist the fact finder, and third, the evidence must be reliable or trustworthy in an evidentiary sense. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir., 2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993)); *see also Hartley v. Dillards*, 310 F.3d 1054, 1060 (8th Cir. 2002). There is no distinction between scientific, technical or other specialized knowledge, but rather the rule "makes clear that any such knowledge might become the subject of expert testimony." *Kumbo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999).

The initial question of whether expert testimony is sufficiently reliable is to be determined by the court, as part of its gatekeeper function. *Daubert*, 509 U.S. at 593 (citing Fed. R. Evid. 104(a)). The Supreme Court provided a number of factors the Court is to consider in determining whether expert testimony should be presented to the jury. *Id.* at 593-94. These factors, generally referred to as the *Daubert* factors, are 1) whether the theory or technique can be, and has been tested, 2) whether the theory has been subjected to peer review and publication, 3) the known or potential rate of error, and 4) whether the theory or technique is generally accepted in the relevant community. *Id.* The Eighth Circuit summarized additional factors in *Lauzon*: "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the

proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." 270 F.3d at 687.

## III. DISCUSSION

Plaintiffs argue that expert testimony is not appropriate in this case, and therefore Mr. Johnson's testimony should be excluded. Plaintiffs argue generally that expert testimony cannot be used in the case at bar for the following reasons: 1) expert testimony cannot be used to interpret ERISA plan documents; 2) expert testimony cannot be used to interpret the terms of a written instrument when common and ordinary meaning is applied pursuant to substantive law; 3) expert testimony cannot be used to show a party's purpose or intent; and 4) expert testimony cannot be used to interpret the law. Plaintiffs also raise a number of specific arguments against against Mr. Johnson's report. Defendants dispute that expert testimony is inappropriate in interpreting the terms of an ERISA plan, and further dispute that expert testimony cannot be used to interpret terms that are subject to an ordinary meaning standard. Additionally, Defendants assert that Mr. Johnson's expert testimony was properly compiled in accordance with the federal rules and therefore should be admitted. The Court will first address whether, as a general matter, expert testimony is appropriate in determining the terms of the ERISA plan at issue; since the Court finds this issue dispositive, it is unnecessary to address Plaintiffs' remaining arguments.

Plaintiffs contend that expert testimony is inappropriate where the legal standard requires the trier of fact to determine a term's ordinary meaning in an ERISA plan document. Defendants respond that expert testimony is permissible in interpreting ERISA plan terms, and furthermore, that Mr. Johnson's testimony speaks to the common usage and purpose within the employee benefits community and is therefore relevant to the determination of the meaning of the ambiguous plan terms.

Courts are required to give ERISA plan terms their common and ordinary meaning.[1] *See* 29 U.S.C. § 1022(a) ("The summary plan description shall . . . be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."); *see also Adams v. Continental Casualty Co.*, 364 F.3d 952, 954 (8th Cir. 2004) ("When reviewing an ERISA plan . . ., we interpret the terms of the plan by giving the language its common and ordinary meaning as a reasonable person in the position of the plan participant . . . would have understood the words to mean." (Internal quotation and alterations omitted)). The Eighth Circuit in *Brewer v. Lincoln National Life Ins. Co.*, held that "[i]t would be improper and unfair to allow experts to define terms that were specifically written for and targeted toward laypersons." 921 F.2d 150, 154 (8th Cir. 1990); *see also Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1327 (8th Cir. 1995) (Citing *Brewer*, and holding that "we must accord the terms 'arising from any employment' its ordinary, not specialized meaning."); *see also Butler Manufacturing Co. v. Blue Cross Blue Shield of Texas*, 2006 WL 3408324, *4 (W.D.Mo. Nov. 27, 2006) (same).

In *Brewer*, the Eighth Circuit reversed the trial court's determination that affective mood disorder was not a mental illness under the terms of an ERISA welfare benefits plan. 921 F.3d at 154. The district court allowed three experts to testify on the question of whether affective mood disorder was a mental illness; all three testified that it was not, because it had an organic origin rather than an environmental origin. *Id*. The Eighth Circuit ruled that the terms of the plan were

---

[1] As stated in a number of this Court's prior rulings, the terms of the plan at issue in the case at bar are ambiguous, and therefore extrinsic evidence is permitted to determine what benefits become vested under the terms of the plan. Furthermore, this Court has previously held that when interpreting plan terms they are to be given their ordinary, not specialized, meaning.

4

intended for laypersons, and therefore allowing the experts to testify was improper. *Id.* The term mental illness was to be accorded its lay definition which would encompass effective mood disorder. *Id.* The Court finds that in the case at bar the issue is whether the terms of the plan allowed certain welfare benefits to become vested, such that they were not subject to amendment by the plan sponsor. As in *Brewer*, it would be unfair to allow an expert to testify to the meaning of these terms, when they were written to be understood by the plan beneficiary who is by definition a layperson.

Defendants raise a number of arguments in opposition to Plaintiffs' motion, a number of which the Court will address in detail. First, Defendants rely upon *Chiles v. Ceridian Corp.*, for the proposition that expert testimony may be used to establish the common usage in the trade.[2] 95 F.3d 1505, 1519 (10th Cir. 1996). The Tenth Circuit in *Chiles* stated that: [i]n interpreting this ambiguous provision in the plan the district court may consider interpretive statements made by Control Data [plan sponsor], past practices, *customary usage in the trade*, and other competent evidence bearing on the understanding of the parties." 95 F.3d at 1519 n. 12 (emphasis added) (citing *Taylor v. Continental Group*, 933 F.2d 1227, 1233 (3rd Cir. 1991)). *Taylor*, stated that customary usage in the trade could be used in determining the meaning of

---

[2]Defendant also cites a number of cases which support the proposition that expert testimony should be admitted whenever it will be useful to the trier of fact, and any doubts regarding the use of expert testimony should be decided in favor of admissibility. *See e.g. Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) ("Rule 702 favors admissibility if the testimony will assist the trier of fact . . ., and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." (Internal citations and quotations omitted)); *see also Larabee v. MM & L International Corp.*, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) ("[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility."). Neither this Court, nor Plaintiff, dispute these general principles regarding expert testimony, however, such general rules cannot be used to disregard the clear Eight Circuit cases which hold that expert testimony is not required to determine a term's ordinary meaning. Furthermore, the Court does not believe that Mr. Johnson's testimony would be useful to the trier of fact, as required by Rule 702 of the Federal Rules of Evidence.

"successor" as used in the plan terms. 933 F.2d at 1231. However, neither *Chiles* nor *Taylor* make any reference to the use of expert testimony, rather they list the evidence that may be admitted on remand in order to determine an ambiguity in the plan terms. *Chiles*, 95 F.3d 1505; *Taylor*, 933 F.2d 1227. Furthermore, the Court in *Chiles*, specifically held that "[a]n SPD is intended to be a document easily interpreted by a layman; an employee should not be required to adopt the skills of a lawyer . . .." 95 F.3d 1517-1518. These cases are not persuasive, and are not binding upon this Court.

Secondly, Defendants argued during the hearing on this matter that the case of *Sunder v. U.S. Bank Pension Plan*, in which this Court used expert testimony to decide a motion for summary judgment in an ERISA case, supports the proposition that expert testimony is generally admissible in an ERISA case. 2007 WL 541595 (E.D.Mo. Feb. 16, 2007). The Court does not believe that *Sunder* is applicable to the facts of the case at bar. In *Sunder* the Court allowed expert testimony regarding the method that was used to calculate the dollar amount of each plaintiffs' opening balance, when a plan amendment was implemented, and in determining whether the cash benefit plan at issue violated ERISA's anti-backloading provisions. Unlike the case at bar, *Sunder* did not involve the interpretation of plan terms by reference to their ordinary meaning. *Sunder* did not involve interpretation of plan terms at all, rather it involved the technical implementation of a cash benefit plan, and the application of ERISA provisions to that plan. The use of expert testimony was appropriate to determine how the defendant pension plan had implemented the statutory requirements, as it was not immediately apparent from the facts of the case. The case at bar requires a determination of the ordinary meaning of plan terms, a task specifically limited by the Eighth Circuit to the trier of fact, and therefore no expert testimony is required.

Lastly, Defendants point to a district of Minnesota opinion in which the use of expert testimony is addressed. In *Rexam Inc. v. United Steel Workers of America, AFL-CIO-CLC*, the district court addressed the admissibility of expert testimony of the same expert witness as proposed in the case at bar, namely Mr. Johnson. 2006 WL 435985, *16 (D.Minn. Feb. 21, 2006). This case is not controlling for a number of reasons. First, the court did not conclusively rule the admissibility of Mr. Johnson's testimony but rather stated that "the Court declines at this time to exclude the proposed expert witnesses' testimony, or to strike particular portions of it." *Id.* The Court advised the plaintiff to file a motion in limine on the same question, and further advised that Mr. Johnson would not be permitted to testify as to what the law provides. *Id.* Furthermore, the purpose of the proposed expert testimony was to "assist the fact-finder in understanding the nature of the collective bargaining process and the materiality of various changes to the process and the materiality of various changes to the plan." *Id.* These stated purposes are distinct from the purpose put forth by Defendants in the case at bar. In Mr. Johnson's expert report he states that: "I was asked to offer an opinion on the common purpose and meaning of the reservation of rights language in Great-West's group life and health plan." *Memo. in Support of Pls. Mot. to Exclude Testimony of Mark Johnson and Strike his Report*, Ex. 1, p. 2. The court is not persuaded that this case necessitates the result sought by Defendants.

The Court finds the Eighth Circuit jurisprudence to be dispositive of the question of expert testimony. The cases clearly hold that expert testimony is not to be admitted when the legal standard is the customary and ordinary usage. This customary and ordinary usage standard is applied to the terms in an employee plan document, or summary plan description, and therefore is the standard to be used in the case at bar. There is no need to allow expert testimony on the

ordinary meaning of the terms of the plan at issue. Plaintiffs' Motion to exclude Mr. Johnson's expert testimony and strike his expert report is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Exclude Testimony of Mark Johnson and Strike His Report [doc. #128] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall advise the Court within ten (10) days of the date of this ruling regarding the status of Plaintiff's Motion to Compel the Production of Unredacted Documents [doc. #127]. Plaintiff shall either withdraw the Motion or renew it.

Dated this <u>18th</u> Day of <u>July</u>, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE