UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER HALBACH, et al., | |
| Plaintiff, | |
| v. | Case No.: 4:05-CV-02399-ERW |
| GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, et al., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Michael E. Brown (No. 102204)
Leslie Greathouse (Admitted *pro hac vice*)
Bradley J. Baumgart  (Admitted *pro hac vice*)
KUTAK ROCK LLP
1010 Grand Boulevard, Suite 500
Kansas City, Missouri 64106-2220
Telephone No. (816) 960-0090
Fax No. (816) 960-0041
E-mail: mike.brown@kutakrock.com
E-mail: leslie.greathouse@kutakrock.com
E-mail: brad.baumgart@kutakrock.com

Marcia Washkuhn (Admitted *pro hac vice*)
KUTAK ROCK LLP
The Omaha Bldg.
1650 Farnam Street
Omaha, Nebraska 68102-2186
Telephone No. (402) 346-6000
Fax No. (402) 346-1148
E-mail: marcia.washkuhn@kutakrock.com

Waldemar J. Pflepsen, Jr. (Admitted *pro hac vice*)
Stephen H. Goldberg (Admitted *pro hac vice*)
Robin M. Sanders (Admitted *pro hac vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street, N.W. Suite 400 East
Washington, D.C. 20007
Telephone No. (202) 965-8000
Fax No. (202) 965-8104
E-mail: wjp@jordenusa.com
E-mail: shg@jordenusa.com
E-mail: rms@jordenusa.com

**Attorneys for Defendants, Great-West Life & Annuity Insurance Company, Great-West Life
& Annuity Insurance Company Employee Welfare Benefit Plan, Health & Welfare Plan for
Employees of Great West Life & Annuity Company, Great-West Life & Annuity Insurance
Company Flexible Benefit Plan, and Great-West Life Staff & Agents' Plan**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    FACTS ............................................................................................................... 2

    A.    The Plan ................................................................................................. 2

        1.    Medical Coverages ................................................................... 3

        2.    Life Insurance Coverage ......................................................... 3

        3.    The Plan, as amended and restated, effective as of January 1, 1997 ........ 3

        4.    Plan Amendments Showing Great-West's Consistent Interpretation of The Plan's Reservation of Rights Provision ......................................... 6

    B.    The January 1, 2005 Plan Amendment ................................................. 6

    C.    Communications With Long-Term Disability Recipients Regarding Plan Benefits ................................................................................................. 8

III.   STANDARD OF REVIEW ............................................................................... 10

    A.    Plaintiff Bears The Burden Of Proving That The Continuation Of The Medical Coverages At Issue In This Case Were Not Vested ............................... 10

    B.    Great-West's Interpretation Of The Relevant Plan Language Is Subject To Judicial Review Pursuant To An Abuse Of Discretion Standard ...................... 12

        1.    Firestone Tire and Rubber Co. v. Bruch mandates the application of an abuse of discretion standard of review in this case ........................ 12

IV.   ARGUMENT ................................................................................................... 15

    A.    Summary Of Argument ......................................................................... 15

    B.    Plaintiff Cannot Carry Her Burden Of Proving That The Medical Coverages Were Vested Prior To Their Termination ......................................... 18

        1.    Written and oral communications stating that the Medical Coverage would continue during the course of a class member's total disability are insufficient to carry Plaintiff's burden of proof regarding whether such coverages vested or were subject to the Plan's reservation of rights provision ...................... 18

        2.    Plaintiff's interpretation of the Plan's reservation of rights provision is contrary to the language of the SPD and governing caselaw ......................... 21

            a.    The SPD makes clear that a benefit becomes "vested" only after a claim is made for a particular medical service ................. 22

            b.    Great-West's interpretation of Section 5.1 is consistent with the Eighth Circuit's (and other jurisdictions') interpretations of substantially similar language ........................ 23

i

# TABLE OF CONTENTS
## (continued)

**Page**

3.   Plaintiff's reliance on Barker I and Barker II is misplaced ..................... 26

C.   Great-West's Interpretation Of The Plan Language At Issue Is Reasonable Under The Finley Factors ...................................................................... 29

1.   Great-West's interpretation of the reservation of rights provision has been consistent..................................................................... 30

2.   Great-West's interpretation does not render any Plan language meaningless and it does not conflict with the goals of ERISA ............... 30

D.   The Medical Coverages At Issue Were Eliminated In Accordance With The Terms Of The Plan And ERISA .................................................. 32

E.   The Court Should Exercise its Discretion and Deny Plaintiff Halbach's Request for Penalties Under ERISA .................................................. 33

V.   CONCLUSION.................................................................................... 36

**TABLE OF AUTHORITIES**

**Page**

## Cases

*Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90 (2d Cir. 2001) .................................................................................................... 21, 31

*Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512 (8th Cir. 1988) ............ 11, 19, 20, 31

*Barker v. Ceridian Corp.*, 193 F.3d 976 (8th Cir. 1999) ........................................ passim

*Barker v. Ceridian Corporation*, 122 F.3d 628 (8th Cir. 1997) ............................... passim

*Bouboulis v. Transp. Workers Union.* 442 F.3d 55 (2d Cir. 2006).................................... 32

*Chiles v. Ceridian Corp.*, 95 F.3d 1505 (10th Cir. 1996) ................................................. 15

*DeGeare v. Alpha Portland Industries, Inc.*, 837 F.2d 812 (8th Cir. 1988),
    *cert. granted, vacated on other grounds by* 489 U.S. 1049 (1989) ............... 10, 13, 19, 23

*DeGeare v. Alpha Portland*, 652 F. Supp. 946 (E.D. Mo. 1986) ..................................... 31

*DeGeare v. Slattery Group, Inc.*, No. 87-2070, 1998 WL 1093472 (U.S.
    June 1, 1988), *cert. granted*, 489 U.S. 1049 (1989) ......................................... 13

*Dickson v. A.B. Holding Co.*, No. 4:03CV1798 CDP, 2005 WL 1828821
    (E.D. Mo. Aug. 2, 2005)................................................................................. 34

*Donaho v. FMC Corp.*, 74 F.3d 894 (8th Cir. 1996) ............................................... 12, 14

*Finley v. Special Agents Mutual Benefit Association, Inc.*, 957 F.2d 617
    (8th Cir. 1992)................................................................................................ 17, 29

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)........................... 12, 34, 35

*Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174 (8th Cir. 2001)........................ 12

*Frahm v. Equitable Life Assur. Soc. of U.S.*, No. 93 Civ. 0081, 1997 WL
    159352 (N.D. Ill. 1997).................................................................................... 31

*Hackett v. Xerox Corp.*, 315 F.3d 771 (7th Cir. 2003) ................................... 25, 26, 31

*Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) ....................................... 35

*Hensley v. P.H. Glatfelter Co.*, No. 1:04cv200, 2005 WL 2000322
    (W.D.N.C. 2005)............................................................................................... 15

*Houghton v. SIPCO, Inc.*, 38 F.3d 953 (8th Cir. 1994) ......................................... 10, 11

*Howe v. Varity Corp.*, 896 F.2d 1107 (8th Cir. 1990) ............................................ passim

*Howe v. Varity Corp.*, No. Civ. 88-1598-E, 1989 WL 95595  (S.D. Iowa
    Jul. 14, 1989).................................................................................................. 24

*Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786 (8th Cir. 2002)............................. 11, 15

*Hutchins v. Champion International Corp.*, 110 F.3d 1341 (8th Cir. 1997) ............. 10, 13, 14, 31

*In re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 58 F.3d 896
    (3rd Cir. 1995)................................................................................................. 21, 31

*Jensen v. SIPCO, Inc.*, 38 F.3d 945 (8th Cir. 1994) ......................................... 11, 15, 28

*John Morrell & Co. v. United Food and Commercial Workers
    International Union, AFL-CIO*, 37 F.3d 1302 (8th Cir. 1994) ............................. 10

*Lynch v. New York City District Council of Carpenters Welfare Fund*, No.
    99 Civ. 0671, 1999 WL 177436 (S.D.N.Y. March 30, 1999)........................... 15

*McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506 (5th Cir. 2000)................. 15

*McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921 (8th Cir. 2004).................... 12

*Mead v. Intermec Tech. Corp.*, 271 F.3d 718 (8th Cir. 2001) ....................................... 34

*Ross v. Rail Car America Group Disability Income Plan*, 285 F.3d 735 (8th
    Cir. 2002) ..................................................................................................... 33

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Slomcenski v. Citibank, N.A.*, 432 F.3d 1271 (11th Cir. 2005) ......................... 33

*Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033
     (8th Cir. 2007) .................................................................. 12, 29, 30

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................. 21

*Stearns v. NCR Corp.*, 297 F.3d 706 (8th Cir. 2002) ............................................ passim

*Vallone v. CNA Financial Corp.*, 375 F.3d 623 (7th Cir. 2004) ........................ 24, 25, 31

*Wasielewski v. Kirberg Roofing, Inc.*, 821 F. Supp. 1303 (E.D. Mo. 1993) ................ 34

*Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634 (4th Cir. 1995) ...................................... 26

*Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923
     (5th Cir. 1995) ........................................................................................ 32

*Wilson v. Moog Automotive, Inc. Pension Plan*, 193 F.3d 1004 (8th Cir.
     1999) ...................................................................................................... 34

**Statutes**

29 U.S.C. § 1002(7) ....................................................................................... 34

29 U.S.C. § 1024(b)(1). ................................................................................. 33

Defendants Great-West Life & Annuity Insurance Company, Great-West Life & Annuity Insurance Company Employee Welfare Benefit Plan,  Health and Welfare Plan For Employees of Great-West Life & Annuity Company, Great-West Life & Annuity Insurance Company Flexible Benefits Plan and Great-West Life Staff & Agents' Plan (collectively "Defendants"), by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure, Rule 56.

## I.      INTRODUCTION

As this Court is well aware, the gravamen of Plaintiff's class claim is that Defendants wrongfully amended the Great-West Life & Annuity Insurance Company Employee Benefit Welfare Plan (the "Plan"), the only employee welfare plan at issue, to terminate the ability of Plaintiff and other disabled class members to continue certain medical coverages on the same terms as active employees so long as they remain(ed) disabled under the terms of the Plan. Plaintiff claims that the ability to continue such coverages was "vested" under the terms of the Plan, and that, in any event, the Defendants did not follow the correct procedures for modifying the Plan to effectuate such termination.

As demonstrated herein, Plaintiff has not and cannot, as a matter of law, carry her burden of proving that Plaintiff's ability to continue the medical coverages at issue were vested.  Such an interpretation is inconsistent with the Plan's reservation of rights provision – under which Great-West reserves the right at any time to amend the provisions of the Plan – and the explanation of such provision in the Plan's Summary Plan Description ("SPD").  While this Court has previously observed in denying, in part, Defendants' motion to dismiss, the Plan's reservation of rights provision was "not facially unambiguous" and indicated that further Plan interpretation might need to occur by way of extrinsic evidence, none of the extrinsic evidence that Plaintiff has proffered in this case or has indicated an intent to proffer is sufficient under the

1

governing law to carry Plaintiff's burden of proof, nor is such evidence even probative of whether Defendant intended to vest a right to continued coverage.   Moreover, Plaintiff's interpretation of the Plan's reservation of rights provision is flatly inconsistent with the interpretation of materially identical language by the Eighth Circuit and other jurisdictions. Furthermore, the procedure that Defendants followed for amending the Plan was indisputably consistent with the procedure set forth in the Plan for amendments.

Finally, since the record is devoid of any evidence of Great-West's bad faith or Plaintiff Halbach's prejudice regarding Great-West's responses to John Lewis' requests for Plan documents, the Court should deny Plaintiff Halbach's individual claim for penalties under ERISA § 502(c) (Count II of the Second Amended Complaint).

Accordingly, Defendant's Motion for Summary Judgment should be granted.

## II.    FACTS[1]

### A.    The Plan

Since at least January 1, 1958, Great-West has been offering welfare benefits to its employees.  *See* Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment ("SOMF"), ¶ 44.  Such welfare benefits have, at various times, included, health, dental, vision, prescription drug, and life insurance coverages.  *See id.*, ¶¶ 45-46.  Since at least the 1973 the Plan has specifically stated that:

> The foregoing rules, regulations, and provisions shall be subject always to such repeal, amendment or substitution …

*Id.*, ¶ 47.

---

[1] Included herein are those facts which are particularly relevant to the instant Motion.  Attached hereto is Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment, which includes additional facts that are incorporated into the instant Motion.

### 1. Medical Coverages

Great-West has offered, and continues to offer, its active employees medical insurance benefits, which, through the years, has included some bundled version of health, dental, vision, and prescription drug insurance ("Medical Coverage").  *See id.*, ¶ 49.  As discussed below, the terms of such Medical Coverage are reviewed annually and regularly change.  *See id.*, ¶¶ 50, 65-72.

To the best of Great-West's knowledge and to the extent discoverable, until December 31, 2004, Great-West provided a bundled package of Medical Coverage to its former employees receiving long-term disability benefits on the same terms as the Medical Coverage offered to active employees. *See id.*, ¶ 51.

### 2. Life Insurance Coverage

At least as early as the mid-1960s, Great-West has been offering life insurance coverage to its employees as part of the Plan.  *See id.*, ¶ 46.  Pursuant to the terms of the 1966 life insurance Plan, former employees receiving long-term disability benefits received a specified amount of life insurance coverage.  *See id.*, ¶ 52.  Such coverage was offered to individuals free of charge pursuant to the Plan's waiver of premium provision.  *See id.*, ¶ 53.  Since 1966, Great-West has, to the best of its knowledge, offered, and continues to offer, life insurance coverage free of charge to those eligible former employees receiving long-term disability benefits who have applied for and received a waiver of premium.  *See id.*, ¶ 54.  As of January 1, 2005, former employees receiving long-term disability benefits who applied for and obtained a waiver of premium continued to receive their life insurance coverage under the Plan.  *See id.*, ¶ 55.

### 3. The Plan, as amended and restated, effective as of January 1, 1997

As part of Great-West's desire to continue the Plan, the Plan was amended and restated effective January 1, 1997.  *See id.*, ¶ 56.  Section 1.24 of the Plan provides that the Plan's SPD is

incorporated by reference into the Plan Document.  *See id.*, ¶ 57.  Pursuant to Section 4.2(b) of the Plan, Great-West, as Plan Administrator, is accorded the authority and discretion "[t]o construe and interpret the terms and intent of the Plan. . .".  *Id.*, ¶ 58.

Under the terms of the Plan, the right of a participant to continue coverage under the Plan is subject to the terms of the Plan's Amendment and Termination provisions (Article V) and the SPD.  *See id.*, ¶ 59.

Specifically, Article V of the Plan provides that:

> 5.1   **Amendment of Plan**.  The Company reserves the right at any time or times to amend the provisions of the Plan to any extent and in any manner that it may deem advisable, by a written instrument signed by an officer of the Company; provided, however, that no such modification shall divest a Participant of benefits under the Plan to which he has become entitled prior to the effective date of the amendment.

> 5.2   **Termination of Plan**.  The Company has established the plan with the bona fide intention and expectation that it will be continued indefinitely, but the Company has no obligation whatsoever to maintain the Plan in whole or in part for any given length of time and may terminate the Plan in whole or in part by written instrument signed by an officer of the Company at any time without liability; provided, however, that such termination shall not divest a Participant of benefits under the Plan to which he has become entitled.

*Id.*, ¶ 60.  And, Sections 2.2 and 2.3 provide that:

> 2.2   **Changes in Coverage**.   Changes in coverage for Participants and Dependents shall be permitted in accordance with the applicable provisions of the SPD and such additional rules as the Administrator may establish regarding the time and manner in which changes shall be made.   A Participant may change to a different Benefit Provider only as permitted in the SPD.   Any change in Benefit Provider will be effective as of the date determined by the Administrator.

> 2.3   **Termination of Coverage**.   Coverage for an individual under this Plan as a Participant or a Dependent shall terminate as set forth in the SPD, except to the extent otherwise specifically provided herein.

4

*Id.*, ¶ 61.

As characterized by the Court in its June 6, 2006 and May 29, 2007 Memoranda and Orders on Defendants' Motions to Dismiss, the Plan interpretation question at issue in Count I is whether pursuant to the second clause of Section 5.1, which provides that "no such [Plan] modification shall divest a Participant of benefits under the Plan to which he has become entitled prior to the effective date of the amendment" (hereinafter referred to as the "provided, however" clause), the Medical Coverages offered under the Plan to former employees receiving long-term disability benefits "become vested only after a claim is made for a particular medical service," or "upon a determination that a participant is disabled." *Id.*, ¶¶ 19, 38.

Great-West's position in this litigation, *i.e.* that Medical Coverages "become vested only after a claim is made for a particular medical service" (*id.*, ¶ 19) is consistent with the SPD's "Plan Modification/Termination" language, which provides that:

> The Employer at its descretion [*sic*] at anytime may:
>
> • change the contributions a Member must pay for benefits; or
>
> • amend or terminate the benefits provided to you in the Plan
>
> **If the Plan is amended or terminated it will not affect coverage
> for services provided prior to the effective date of the change.**

*Id.*, ¶ 62. (emphasis supplied).

Moreover, consistent with the aforecited Plan and SPD provisions, Great-West has, as shown below, consistently interpreted the "provided, however" clause of Section 5.1 to only mean that *services* rendered prior to the effective date of a Plan amendment will be not affected by a Plan amendment.  *See generally*, ¶¶ 65-74.  Although Great-West has been unable to trace the origins of Section 5.1, it has been made clear through deposition testimony that

Great-West did not intend and has never interpreted the language in Section 5.1 to preclude Great-West from terminating a plan participant's right to future welfare benefits under the Plan.

### 4.      Plan Amendments Showing Great-West's Consistent Interpretation of The Plan's Reservation of Rights Provision

Throughout the years, Great-West, consistent with its interpretation of Section 5.1 of the Plan as applied to the termination of Plaintiff's Medical Coverages in this case, has exercised its rights under the Plan by routinely modifying or terminating coverages, benefit options and employee contribution levels for all or particular classes of Plan participants. *See id.*, ¶¶ 65-72, 74.

Furthermore, on an annual basis, Great-West's Human Resources department provides to Plan participants summaries of the upcoming year's Plan changes.  *See id.*, ¶ 73.  These summaries include descriptions of Plan changes that are applicable to all or some of the Plan participants. *See id.*  Examples of Plan changes reflected in these summaries include premium changes applicable to everyone or termination of particular coverages for a subset of Plan participants. *See id.*, ¶ 74.

### B.      The January 1, 2005 Plan Amendment

Beginning in the late spring/early summer of 2004, Great-West's benefits department began its annual review of Plan benefits.  *See id.*, ¶ 75.  As part of this review, Chelle Dillabough, Great-West's Assistant Vice President of Compensation and Benefits, became aware that Great-West offered medical benefits to former employees receiving long-term disability benefits on the same terms as active employees.  *See id.*, ¶ 76.  Based on her experience, Ms. Dillabough believed this was a unique practice.  *See id.*, ¶ 77.  In order to determine whether such benefits were in fact unusual in the relevant market (*e.g.* the Financial Services Industry, Healthcare Insurance Industry and Colorado based companies), the benefits department reviewed

6

data obtained from multiple "reputable sources of benefits data." *See id.*, ¶ 78. As a result of the benefits department's review and presentation of data regarding the market competitiveness of Great-West's benefits programs, as well as a review of other considerations related to Plan amendments (*e.g.* whether the proposed Plan amendment will subject Great-West to any "legal risks," analyzing the cost associated with amending to the Plan, and the Medicare eligibility of affected long-term disability recipients[2]), the Benefits Advisory committee recommended to Great-West's Benefits Approval committee that, in addition to numerous others Plan changes, Great-West terminate the continued Medical Coverages for individuals receiving long-term disability benefits. *See id.*, ¶ 78. In addition to many other Plan changes, the Benefits Approval committee approved the relevant Plan amendment, effective January 1, 2005, began. *See id.*, ¶ 80.

Section 5.1 of the Plan explicitly authorizes the Plan to be amended "by a written instrument signed by an officer of the Company." *Id.*, ¶¶ 60, 82. Consistent with this procedure an officer of the Company, Vice President of Human Resources of Great-West, George Bogdewiecz, informed Plan participants of the January 1, 2005, Plan changes by letters dated October 27, and November 8, 2004. *See id.*, ¶ 83. Mr. Bogdewiecz's October 27 and November 8, 2004, letters stated that, effective, December 31, 2004, long-term disability recipients would no longer receive Medical Coverage and were entitled to apply for COBRA coverage. *See id.*, ¶ 84.

Consistent with this notification, the 2005 SPD no longer provided for a continuation of these coverages for Plan participants receiving long-term disability benefits. Thus, the following section found in the 2004 SPD was deleted from the 2005 SPD:

---

[2] The benefits department determined that approximately 87 long-term disability recipients were Medicare eligible at of December 31, 2004. *See id.*, ¶ 79, citing Exhibit 42.

> **Can I Continue or Convert My Coverage If I Become Ineligible?**
>
> If you become ineligible for coverage under the Plan, you may be able to continue coverage for certain benefits.
>
> <u>Continuation of Life Insurance, Medical, Prescription Drug, Dental, and Vision Benefits during an Illness or Absence</u>
>
> If your Service ends due to Illness and you have been approved for LTD benefits, coverage will continue during the course of the total disability.

*See id.*, ¶¶ 85.

The January 1, 2005 Plan amendment did not affect the class members' life insurance coverage.  *See id.*, ¶ 55.

### C.    Communications With Long-Term Disability Recipients Regarding Plan Benefits

Great-West's Disability Administrators are tasked with sending informal letters to Plan participants receiving short-term disability benefits regarding the process through which the participants may apply for long-term disability benefits.  *See id.*, ¶ 86.  These informal letters are generally template letters that are sent out approximately sixty-days before the expiration of the employees' short-term disability.  *See id.*, ¶ 87.  Included in the template letters is a general description of the benefits that are available under the long-term disability plan, as of the date of the letters. *See id.*, ¶ 88.  One version of these letters, representative of those being sent to short-term disability recipients, states in relevant part that:

> Your current benefit coverages will terminate effective the date your employment terminates.  A COBRA letter will be issued and sent to your home address. If your LTD benefits are approved, insurance premiums will be deducted from your LTD check. However, your Group Life Insurance premiums will be waived.
>
> The date that you are no longer eligible for Long Term Disability benefits is the date that your benefit coverages also terminate.  At

8

> that time, you have the option of continuing your Health, Dental
> and Vision coverage under COBRA.

*Id.*, ¶ 90.  Until 2005, when the Plan was amended to terminate the continued Medical Coverage

for former employees receiving long-term disability benefits, this language, or substantively

similar language, had been in the template letters since at least 1991, if not before.  *See id.*, ¶¶

89-91.

As of January 2005, the template for these letters was revised to reflect the Plan

amendment.  *See id.*, ¶ 92.  Accordingly, in relevant part, the revised letters state that:

> If approved for LTD benefits the current life coverages you are
> enrolled in will continue.  However, your current benefit coverages
> will terminate effective the date your employment terminates.  A
> COBRA notice will be issued and mailed under separate cover to
> your home address.  At that time you have the option of continuing
> your Health, Dental and Visioncare coverage under COBRA.
> Your Group Life Insurance premiums will be waived.

*Id.*  There is no evidence from Plaintiff or any of the class members that any of these template

letters, or any other informal written correspondence from Great-West describing Plan terms,

include statements that the class members' alleged right to Medical Coverage under the Plan is

not subject to the Plan's reservation of rights provision as reflected in Section 5.1 and the "Plan

Modification/Termination" section of the SPD.  *See id.*, ¶¶ 94-98.

With respect to oral communications, deposition testimony reflects that none of the

Great-West's representatives have communicated with Plan participants regarding the Plan's

reservation of rights provision or Great-West's power under the Plan to amend or terminate

coverages.  *See id.*, ¶ 99.  Further, while the some of the unnamed class members assert that

Great-West's representatives told them that their health benefits would continue until they were

no longer disabled, none of their declarations and/or interrogatory responses, reflect that any of

Great-West's representatives told them that the continuation of their Medical Coverage was not

subject to the Plan's reservation of rights provision as reflected in Section 5.1 of the Plan and the SPD.  *See id.*

## III.   STANDARD OF REVIEW

### A.   Plaintiff Bears The Burden Of Proving That The Continuation Of The Medical Coverages At Issue In This Case Were Not Vested.

As the Court has previously recognized in this case, "'[v]esting is not mandatory [under ERISA] for 'employee welfare benefit plans' – plans that offer benefits such as the medical benefits here at issue.  Therefore, an employer may unilaterally modify or terminate medical benefits at any time 'absent the employers contractual agreement to the contrary.'"  *Id.*, ¶ 20. "Because welfare benefits do not statutorily vest under ERISA, ***the employees carry the burden of showing an agreement or other demonstration of employer intent to vest benefits.***"  *Barker v. Ceridian Corporation*, 122 F.3d 628, 634 (8th Cir. 1997) ("*Barker I*") (emphasis added); *Howe v. Varity Corp.*, 896 F.2d 1107, 1109 (8th Cir. 1990).  *See also Hutchins v. Champion International Corp.*, 110 F.3d 1341, 1345 (8th Cir. 1997); *Houghton v. SIPCO, Inc.*, 38 F.3d 953, 957 (8th Cir. 1994).

The Eight Circuit has described this burden as "difficult, though not impossible, . . . since courts are reluctant to read more benefits into an ERISA plan than its plain language confers." *John Morrell & Co. v. United Food and Commercial Workers International Union, AFL-CIO*, 37 F.3d 1302, 1304 (8th Cir. 1994).  The Court has further explained that it is especially important that the burden of proof be placed on the employee where the benefits in question are unilaterally provided by the employer, because to do otherwise "would lead to an anomalous result that [the employer] would have to prove a negative – that it did not promise lifetime benefits – every time plaintiffs choose to file a lawsuit."  *DeGeare v. Alpha Portland Industries, Inc.*, 837 F.2d 812, 815 (8th Cir. 1988), *cert. granted, vacated on other grounds by* 489 U.S. 1049 (1989).

10

The Eighth Circuit has, consistent with other jurisdictions, set forth several important principles in determining whether an employee has carried its burden of proving that medical benefits were vested.  First, as the Court has previously recognized, because ERISA requires that an employee benefit plan be in writing, "any contractual agreement with the employer providing vested benefits must be 'incorporated in some fashion, into the formal written ERISA plan.'" SOMF, ¶ 21, quoting *Jensen*.  Accordingly, the Eighth Circuit has repeatedly held that vesting cannot be established pursuant to oral or informal written communications to employees.  *See Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1517 (8th Cir. 1988); *Barker v. Ceridian Corp.*, 193 F.3d 976, 982 (8th Cir. 1999) ("*Barker II*"); *Houghton*, 38 F.3d at 958.

Further, the Eighth Circuit has held that "a reservation of rights provision [*i.e.*, a provision permitting the amendment or termination of plan coverages, benefits, or other terms] is inconsistent with, and in most cases would defeat a claim of vested benefits." *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 950 (8th Cir. 1994).  *See also Stearns v. NCR Corp.*, 297 F.3d 706, 712 (8th Cir. 2002) (collecting cases).  To find otherwise would, under normal circumstances "leave the reservation of rights provision . . . with no meaning at all, contrary to normal trust and contract principles of construction." *Houghton*, 38 F.3d at 958.

Finally, the Eighth Circuit has stated that an intent to vest may not be implied from the fact that documents explaining a plan do not explicitly "address the vesting issue or cross-reference the Reservation of Rights provision." *Stearns*, 297 F.3d at 712.  "Indeed, not even the ERISA-mandated summary plan description need disclose that welfare plan benefits are not vested." *Id.  See also Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 792 (8th Cir. 2002); *Jensen*, 38 F.3d at 952.

11

**B.**     **Great-West's Interpretation Of The Relevant Plan Language Is Subject To Judicial Review Pursuant To An Abuse Of Discretion Standard.**

Not only does Plaintiff carry the burden of proving that the continuation of her Medical Coverages were vested for the course of her long-term disability, but Great-West's interpretation of the Plan as permitting the termination of such coverages is subject to review by the Court pursuant to an abuse of discretion standard.

Under the deferential abuse of discretion standard review, an administrator's decision will stand if it is reasonable. *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004) (citing *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)). "A plan administrator's decision is reasonable if a reasonable person could have, based upon the same evidence, reached a similar decision. … If the plan administrator's decision offers a reasonable explanation, the decision should not be disturbed even if another reasonable, but different interpretation may be made." *Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033, 1035 (8th Cir. 2007) (citations omitted). "In other words, a district court cannot overrule a plan's decision simply because it disagrees with that decision." *Id.* (citing *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1180 (8th Cir. 2001)); *see also McGee*, 360 F.3d at 924 ("[i]f substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made") (citations omitted).

**1.**     ***Firestone Tire and Rubber Co. v. Bruch* mandates the application of an abuse of discretion standard of review in this case.**

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989), the U.S. Supreme Court held that where a plan's language gives the plan administrator discretion to construe or interpret the terms and intent of the plan, ***the administrator's denial of plan benefits is subject to review under an abuse of discretion standard***.  Although *Bruch* involved the review of a denial of a claim for benefits pursuant to ERISA Section 502(a)(1)(B), both the Supreme Court and the

Eighth Circuit have made it clear that its holding in *Bruch* is equally applicable to the interpretation of an employer's right under the terms of a plan to terminate benefits for a class of plan participants when such participants allege that benefits were vested and wrongfully terminated, as is the case here.

In *DeGeare*, a certified class of retired plan participants challenged the termination of their retiree health benefits on the grounds that such benefits were vested.  837 F.2d at 813.  The Eighth Circuit upheld the employer/plan administrator's termination of benefits, and, in so doing, gave deference to the plan administrator's interpretation of the plan.  Following the Supreme Court's grant of a writ of certiorari in *Bruch*, but prior to its rendering a decision in that case, the plan participants in *DeGeare* petitioned the Supreme Court for a writ of certiorari.  The *DeGeare* participants argued that although the facts in *DeGeare* and *Bruch* were different the same outcome should apply in both situations.  *DeGeare v. Alpha Portland Industries*, 837 F.2d 812, 813, (8th Cir. 1988), *petition for cert. filed*, *DeGeare v. Slattery Group, Inc.*, No. 87-2070, 1998 WL 1093472 (U.S. June 1, 1988), *cert. granted*, 489 U.S. 1049 (1989).

Implicitly agreeing with the *DeGeare* petitioners that the principles for the determination of the appropriate standard of review should be the same under the facts of both *DeGeare* and *Bruch*, the Supreme Court granted the petition for certiorari in *DeGeare* and remanded the case to the Eighth Circuit "for further consideration in light of *Firestone Tire & Rubber Co. v. Bruch* ... ."  *DeGeare v. Slattery Group, Inc.*, No. 87-2070, 1998 WL 1093472 (U.S. June 1, 1988), *cert. granted*, 489 U.S. 1049 (1989).

Further, in *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1344 (8th Cir. 1997), the Eighth Circuit applied *Bruch* to the standard of review governing a determination as to the validity of a plan amendment.  Champion amended its Long-Term Disability Benefits Plan to

exclude benefits to people who were incarcerated.  Plaintiff, who pled guilty to burglary and was

sentenced to prison, challenged the validity of this plan amendment on the grounds that it was

not approved by Champion's board of directors, as required under the following provision of the

plan:

> [t]he Company hereby reserves the right to amend or terminate the
> Plan at any time by action of its Board of Directors; provided,
> however, any amendment **which is not a substantive amendment**
> shall be made on behalf of [the Company] by the [Company's
> pension and employee benefits committee ("PEBC")].

*Id*. at 1343 (emphasis supplied).

Champion argued that the PEBC approved the amendment and that the Board of

Directors' approval was not required because the amendment was not "substantive" within the

meaning of the above-quoted Plan provision.  *Id.*  Plaintiff argued that the amendment was, in

fact, "substantive," and the district court agreed with plaintiff's interpretation.  *Id.* at 1343-44.

The Eighth Circuit reversed the district court's ruling, holding that, **for purposes of

determining the amendment's validity**, the Company's interpretation of the relevant language in

the plan (*i.e.*, the meaning of "substantive") **was subject to an abuse of discretion standard of

review**:

> The plan provides the PEBC with the 'sole, absolute and
> uncontrolled' discretion to administer the plan and states that this
> includes the power to interpret its provisions.  We therefore review
> the PEBC's interpretation of its plan under an abuse of discretion
> standard.  *See Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir
> 1996).  Since the PEBC has been given discretion to interpret the
> terms of the plan, we may not find the interpretation invalid merely
> because we disagree with it, but only if it is unreasonable.  *Id.* at
> 898-99.   An interpretation is 'reasonable if a reasonable person
> *could* have reached a similar decision, given the evidence before
> him.'  *Id.* at 899.

*Id.* at 1344 (emphasis in original).  This holding is equally applicable to determining the validity

of the Plan amendment in this case, which rests upon Defendants' interpretation of the Plan's

reservation of rights clause. *See also Lynch v. New York City District Council of Carpenters Welfare Fund*, No. 99 Civ. 0671, 1999 WL 177436, *4-5 (S.D.N.Y. March 30, 1999) (court adopted arbitrary and capricious standard of review to determine whether, under the terms of the plan, the plan administrator had the right to amend the plan and did so validly);[3] *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 513 (5th Cir. 2000) (court applied the abuse of discretion standard to a challenged amendment where the summary plan description reserved the right to amend or terminate the plan); *Hensley v. P.H. Glatfelter Co.*, No. 1:04cv200, 2005 WL 2000322, at *4 (W.D.N.C. 2005) (court determined that a decision of whether the termination of plaintiffs' benefits was permissible would be reviewed under an abuse of discretion standard where the plan reserved the right to modify, amend or terminate the plan).

Therefore, since the language of the Plan in this case affords the Plan Administrator (*i.e.,* Great-West) the authority and discretion "[t]o construe and interpret the terms and intent of the Plan …" (SOMF, ¶ 60), under the authority of *Bruch* and Eighth Circuit precedent, the abuse of discretion standard is applicable to Great-West's interpretation of the Plan's reservation of rights provision.

## IV.   ARGUMENT

### A.   Summary Of Argument

The Eighth Circuit has made it clear that in interpreting the plan it is the ***intent of the settlor*** (*i.e.*, employer/sponsor), as distinguished from a plan participant's understanding of such language, that is important.[4]  *Barker II*, 193 F.3d at 981; *Jensen*, 38 F.3d at 950.  In this regard, courts are directed to first ascertain such intent from the language of the relevant provision itself.

---

[3] For the Court's convenience, copies of all unreported cases are attached hereto as the Appendix of Unreported Cases.

[4] Thus, while the Eighth Circuit has opined that plan language should be interpreted by giving the language its common and ordinary meaning, such meaning should be determined "'as a reasonable person in the position of the [plan] participant, ***not the actual plan participant***, would have understood the words to mean.'"  *Hughes*, 281 F.3d at 790, quoting *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) (emphasis supplied).

If the relevant provision is found to be ambiguous, then a court may look to the plan as a whole. Only after determining that the provision at issue cannot be reconciled with the plan in its entirety, may the Court consider extrinsic evidence as to the settlor's intent.  *See Barker I*, 122 F.3d at 633, 635, 637-638.  In *Barker II,* the Eighth Circuit explained the limited types of extrinsic evidence that may be admissible to show the settlor's intent of ambiguous plan provisions –  *e.g.* "contemporaneous interpretations" by the employer as to the drafting and/or interpretation of disputed Plan provision language at the time the provision was drafted.  *See, e.g.*, *Barker II*, 193 F.3d at 982.

Section 5.1 of the Plan explicitly authorizes Great-West to:

> 5.1   **Amendment of Plan**.  The Company reserves the right at any time or times to amend the provisions of the Plan to any extent and in any manner that it may deem advisable, by a written instrument signed by an officer of the Company; provided, however, that no such modification shall divest a Participant of benefits under the Plan to which he has become entitled prior to the effective date of the amendment.

SOMF, ¶ 60.  Notwithstanding such language, in her prior filings, Plaintiff has either argued or indicated that she can carry her burden of proof in this case through some or all of the following: (i) the language in the Plan's reservation of rights provision that "[no amendment of the Plan] shall divest a participant of benefits under the Plan to which he has become entitled"; (ii) SPD language that provides that the Medical Coverages for persons eligible for long-term disability benefits continue "during the course [of the person's] total disability"; (iii) similar language in letters sent to persons when they first become eligible for long-term disability benefits; (iv) oral and written communications between disabled persons and Great-West's disability and human resource representatives to the same effect.

Consistent with the governing case law in this jurisdiction, none or any combination of such types of evidence are sufficient to carry Plaintiff's burden of proof.  The Eighth Circuit, has

held that SPD language and representations in informal documents, and/or oral communications with employer representatives providing or stating that a benefit will continue for a certain duration are insufficient to establish that such benefits are vested if (i) the Plan contains a reservation of rights provision and (ii) the written or oral statements in question do not explicitly provide that such benefits are vested (*e.g.*, for the duration of a disability, for life) *notwithstanding a plan's reservation of rights provision*. As demonstrated herein, the Eighth Circuit has interpreted language substantially similar to the "provided, however" clause in Section 5.1 to only vest claims for particular covered medical services that are incurred prior to the time when such coverage is terminated. *Howe v. Varity Corp.,* 896 F.2d 1107, 1108-1110 (8th Cir. 1990). This interpretation is consistent with how the SPD explains section 5.1's "provided, however" clause -- *"[i]f the Plan is amended or terminated it will not affect coverage for services provided prior to the effective date of the change."* SOMF, ¶ 62 (emphasis supplied).

Moreover, through the application of the governing five-factor test adopted by the Eighth Circuit in *Finley v. Special Agents Mutual Benefit Association, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992), Great-West's interpretation of the Plan is reasonable and does not constitute an abuse of discretion.

Next, Plaintiff's allegations that Great-West utilized an improper procedure when it amended the Plan are clearly without merit. Based on the language of the Plan, which authorizes amendments through "a written instrument signed by an officer of the Company," (SOMF, ¶ 60) George Bogdewiecz's October 27, 2004 and November 8, 2004 letters to the affected Plan participants clearly satisfy Section 5.1's Plan amendment procedures. *See* SOMF, ¶¶ 83-84. Furthermore, to the extent the procedures were contrary to the Plan terms, which they were not,

as demonstrated below, Great-West nonetheless amended the Plan in accordance with ERISA's requirements.

Finally, Plaintiff Halbach's individual claim for penalties should be dismissed as a matter of law because (i) the penalties sought on behalf of Mr. Lewis' estate are not "benefits" under ERISA, and (ii) there is no evidence in the record of Great-West's bad faith or Plaintiff Halbach's prejudice arising from Great-West's actions in response to Mr. Lewis' initial request for documents in February 2005.

**B.      Plaintiff Cannot Carry Her Burden Of Proving That The Medical Coverages Were Vested Prior To Their Termination.**

**1.      Written and oral communications stating that the Medical Coverage would continue during the course of a class member's total disability are insufficient to carry Plaintiff's burden of proof regarding whether such coverages vested or were subject to the Plan's reservation of rights provision.**

Great-West concedes that there is language in the SPDs and informal communications with class members stating that Plan participants who become eligible for long-term disability benefits could continue their Medical Coverages. *See* SOMF, ¶¶ 51, 88-91, 96. Moreover, for purposes of this Motion, Great-West will assume that some class members were told the same thing by Great-West disability or human resource representatives. *See id.*, ¶ 99. Plaintiff, however, has not and cannot point to any language in the SPD or any oral or written communications expressing that the right to continued Medical Coverages was ***not*** subject to the Plan's reservation of rights provision. *Id.*, ¶¶ 94-95, 97-99. Likewise, in response to Great-West's discovery requests, Plaintiff has not produced any evidence of any communications between Great-West and any class member in which such member was informed that the continuation of their Medical Coverages could not be terminated pursuant to the Plan's

reservation of rights provision.[5]  *Id.*, ¶¶ 96-99.  The Eighth Circuit makes clear that an intent on the part of the employer to vest a benefit may not be implied from documents or oral statements of the type previously relied upon by Plaintiff and described in the unnamed class members' declarations.

For example, in *DeGeare,* the Eighth Circuit considered the claims of plaintiff retirees who argued that the defendant employer had no right to terminate the continuation of retiree welfare benefits because the right to the continuation of such benefits became vested under the terms of their plan when they retired.  837 F.2d at 813.  In support of their claims, plaintiffs relied on SPD language which provided in part that "[i]f you retire with 10 or more years of service on or after January 1, 1976, you will continue to receive the Hospital/Surgical and Major Medical portion of plan coverage.  ***Coverage will continue for the remainder of your life*.**"  *Id.* at 814 (internal quotations omitted) (emphasis supplied).  The same SPDs, however, also contained the following reservation of rights language:

> the Company expects and intends to continue this plan indefinitely but reserves the right to end or  amend it.  If the plan is terminated by the Company, benefits will be paid for bills incurred prior to the termination date of the plan and ***for individuals whose coverage would continue due to disability***.

*Id.* at 814 (emphasis supplied).  The Court held that the continuation of retiree medical benefits was not vested because the above quoted reservation of rights language was "'inconsistent with plaintiffs argument that benefits were vested for life.'"  *Id.* at 816 (quoting *Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1518-1519 (8th Cir. 1988)).[6]

---

[5] Even if Plaintiffs had produced such evidence, such oral communications would be insufficient to meet Plaintiffs' burden of proof because informal oral communications may not be used to alter plan terms.  *See Barker II*, 193 F.3d at 982.

[6] Utilizing ordinary principles of contract interpretation, the Eighth Circuit found that the "district court reached ***the only reasonable conclusion regarding the interpretation of plan documents***."  *Id.* at 816.

In *Anderson*, the Eighth Circuit reached the same holding under similar circumstances to those in *DeGeare*. 836 F.2d at 1518-19. In addition to relying on written statements that certain benefits would be provided "for life," plaintiffs offered evidence that they had been told orally by a company representative that the benefits at issue lasted "for life." *Id.* at 1515. The Court found that this language, which is a stronger expression as to the length of time benefits would be offered than the expressions offered in this case, was inadequate:

> The gist of [plaintiff's] claim is that the employer's oral statement to individual employees of its "policy" became a contract to maintain and improve the plan when the employees thereafter performed service. Yet if that be so, it would equally follow that an employer's announcement of any plan to pay welfare benefits would become a contract to maintain the plan indefinitely upon the performance of service by employees. Congress, however, did not intend that result. Doubtless it is consistent with the intent of Congress for an employer to undertake such an obligation if it elects to do so. ***We conclude, however, that to accomplish that result, there must be a specific, if not written, expression of the employer's intent to be bound.***

*Id.* at 1517 (emphasis supplied).

More recently, in *Stearns*, the Eighth Circuit reiterated that an unambiguous reservation of rights provision defeats a claim that particular benefits have become vested when such a claim is predicated on SPD language or informal communications that benefits will continue for a certain duration (*e.g.*, for life or for as long as a person remains disabled). 297 F.3d at 712.

> An intent to vest may not be implied from the fact that the Releases and the NCR documents explaining the Program did not address the vesting issue or cross-reference the Reservation of Rights provision. Indeed, not even the ERISA-mandated summary plan description need disclose that welfare plan benefits are not vested. *See Hughes*, 281 F.3d at 792; *Jensen*, 38 F.3d at 952. Thus, under our well-established principles of ERISA plan interpretation, the district court properly granted summary judgment in favor of NCR dismissing plaintiffs' ERISA plan enforcement claims.

20

*Id.*[7]

Accordingly, Plaintiff cannot carry her burden of proving that the continuation of her Medical Coverages had "vested" merely by relying on the SPD language, informal communications and oral statements which stated – ***without referencing the Plan's reservation of rights provision*** – that her medical coverages would continue so long as she remained disabled.

>    **2.    Plaintiff's interpretation of the Plan's reservation of rights provision is contrary to the language of the SPD and governing caselaw.**

In addition to the written and oral statements discussed above, Plaintiff relies on the "provided, however" clause in the Plan's reservation of rights provision as establishing that the continuation of the Medical Coverages at issue in this case were vested and could not be terminated:

>    The Company reserves the right at any time or times to amend the provisions of the Plan to any extent and in any manner that is may deem advisable by a written instrument; **provided, however, that no such modification shall divest a Participant of benefits under the Plan to which he has become entitled prior to the effective date of the amendment.**

SOMF, ¶ 60 (emphasis added).[8]

---

[7] These holdings are consistent with the law in other jurisdictions.  *See, e.g.*, *In re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 58 F.3d 896, 904 (3rd Cir. 1995) (citing to *DeGeare* and holding that an employer can qualify the provision of "lifetime" benefits by reserving the right to terminate the plan under which those benefits are provided); *Sprague v. General Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) (finding no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost through retirement and that the terms of the current plan are subject to change – "To read this summary as saying that the plan can never be changed in such a way as to mandate retiree contributions for continued medical coverage is to read into the summary something its authors did not put there as a promise to provide lifetime 'paid up' medical insurance, while reading out of the summary something that clearly was put there (an express reservation of right to change the plan)"); *Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 98-99 (2d Cir. 2001) (same).

[8] Article V of the Plan also contains a "Termination of Plan" provision.  The last clause of Section 5.2 – *e.g.*, "provided, however, that such [Plan] termination shall not divest a Participant of benefits under the Plan to which he has become entitled" – is in all material respects identical to the "provided, however" clause in Section 5.1.  *Id.*

The Court has previously summarized the parties different interpretations of the above language:

> [Great-West] argue[s] that benefits become vested only after a claim is made for a particular medical service.  Plaintiff argues that a right to medical benefits vests upon the determination that a participant is disabled.

*Id.*, ¶ 19.  Plaintiff's interpretation of the above-referenced language is inconsistent with the SPD, which is explicitly made part of the Plan and which was in effect at the time that the Medical Coverages were terminated.   Such interpretation also is inconsistent with the interpretation of language similar to that at issue in this case by the Eighth Circuit and courts in other jurisdictions.

### a.     The SPD makes clear that a benefit becomes "vested" only after a claim is made for a particular medical service.

The SPD clearly explains to Plan participants Great-West's right (consistent with Section 5.1) to amend or terminate benefits provided under the Plan.  The SPD further unambiguously explains that Great-West's right to terminate benefits is limited only by an obligation to pay for covered medical services incurred prior to the effective date of any termination of benefits:

> **Plan Modification/Termination**
>
> The Employer at its descretion [sic] at any time may:
>
> · change the contributions a Member must pay for benefits; or
>
> · amend or terminate the benefits provided to you in the Plan
>
> **If the Plan is amended or terminated it will not affect the coverage for services provided prior to the effective date of such change.**

SOMF, ¶ 62 (emphasis added).  Nothing in this language even implies that any benefits are vested beyond a participant's right to receive payment for covered services rendered prior to such modification or termination.[9]

> **b.** **Great-West's interpretation of Section 5.1 is consistent with the Eighth Circuit's (and other jurisdictions') interpretations of substantially similar language.**

Not only is Plaintiff's interpretation of the language at issue in Section 5.1 of the Plan inconsistent with the clear language of the SPD, it is also inconsistent with the Eight Circuit's interpretation of substantially similar language.  In *Howe v. Varity Corp.*, 896 F.2d 1107 (8th Cir. 1990), the Summary Plan Description of the welfare benefit Plan of Massey-Ferguson, Inc. ("M-F") promised certain lifetime welfare benefits to retirees and disabled participants of M-F and certain of its affiliates.  However, as a result of the financial difficulties of one of M-F's subsidiaries which led to it being placed in receivership, the receiver of that subsidiary notified all of its welfare plan participants that it was immediately discontinuing welfare benefits for all participants including those who were retired or disabled.  *Id.* at 1108.  Class representatives of retirees and disabled employees brought suit seeking preliminary injunctive relief requiring the reinstatement of benefit coverages for those retirees and disabled employees whose coverage had been terminated.  *Id.*

The relevant section of the plan governing plan amendments and termination, which is substantially similar to the language at issue in this case, provided as follows:

---

[9] An example of a reservation of rights clause used be an employer intending to vest benefits for the disabled is reflected in the SPD language addressed in *DeGeare*:

> the Company expects and intends to continue this plan indefinitely but reserves the right to and as amend it.  If the plan is terminated, benefits will be paid for bills incurred prior to the termination date of the Plan *and for individuals whose coverage would continue due to disability.*

*DeGeare v. Alpha Portland Industries*, 837 F.2d at 814 (emphasis supplied).

> The company hereby reserves the right … to amend or terminate the Plan or Trust at any time, provided no such amendment or termination shall have the effect of diverting the Trust funds to purposes other than the exclusive benefit of the Employees except as provided in Section 7.1.   However, the right to amend or terminate the Plan ***shall not, in any way, affect an Employee's right to claim benefits, diminish, or eliminate any claims for benefits under the provisions of the Plan to which the Employee shall have become entitled*** prior to the exercise of the Company's right, through its Board, to terminate or amend.

*Id.* (emphasis supplied).   The district court interpreted the term "right to claim benefits … to which an employee shall have become entitled" as providing for the vesting of benefit coverages and not just the vesting of a right to reimbursement for medical expenses already incurred (or, as the district court put it, "pipeline claims") and granted the preliminary injunction.  *See Howe v. Varity Corp.*, No. Civ. 88-1598-E, 1989 WL 95595, *4-5, 20 (S.D. Iowa Jul. 14, 1989).

The Eighth Circuit, in reversing the district court in part, disagreed with the district court's interpretation of that plan language, holding that "Section 7.4 merely protects an employee's right ***to claim benefits for an injury or disabling event that occurs prior to the termination of the plan***."  *Howe*, 896 F.2d at 1110 (emphasis supplied).  For example the Court stated, "if a covered employee were to break a bone one day before the plan is terminated that employee would be 'entitled' to medical expense reimbursement for the injury."  *Id.* at 1110, n. 5.  Based on the relevant language of the plan, the Court concluded that claimants' welfare benefits did not vest and were subject to termination.  *Id.* at 1110.

Similar plan language was reviewed by the Seventh Circuit in *Vallone v. CNA Financial Corp.*, 375 F.3d 623 (7th Cir. 2004), to the same effect.  There, Continental Insurance Company (Continental) offered an early retirement package to some of its employees, which included "lifetime" health care benefits (a Health Care Allowance (HCA)).  375 F.3d at 626.  In 1995, Continental was acquired by CNA Financial Corporation (CNA). In 1998, CNA notified the

early retirees that as of January 1, 1999, their HCA benefit would be terminated, which decision plaintiffs challenged.  The district court's grant of summary judgment to the defendants on all claims was appealed to the Seventh Circuit.  *Id.*

The plaintiffs argued that language in the 1990 Plan authorized the vesting of their retirement benefits in such a way that the reservation of rights clause in the Plan allowed the benefits to be changed or terminated only ***prior*** to their retirement.  *Id.* at 637.  For this proposition, the plaintiffs seized upon the following language:  "no such amendment or termination shall diminish or eliminate any claim for a benefit under the Plan to which a participant ***shall have become entitled prior to such amendment or termination***, as applicable." *Id.* (emphasis supplied).

The Seventh Circuit, however, rejected this argument as:

> presum[ing] the very things the plaintiffs are trying to prove:  that upon their retirement, the early retirees became entitled to their retirement benefits, which could not be diminished or eliminated by later amendments.  As we have already explained, welfare benefits, unlike pension benefits, do not vest upon retirement.  And the reservation of rights clauses contained in the 1992 Retirement Guide and other general retirement plan documents, which were applicable to the VSRP, allow amendment or modification of retirement benefits even after retirement.   Thus, there was no entitlement to the HCA benefit on a going-forward basis.  *See Hackett v. Xerox Corp.*, 315 F.3d 771, 774 (7th Cir. 2003) (analyzing language in a benefits plan similar to the language here and holding that "[r]ights to benefits do not accrue prospectively").  The language at issue here prevented CNA from amending its ***retirement plan to require retirees to pay back HCA allowances already paid out, or retroactively terminating coverage for a claim to medical benefits to avoid paying such a claim***.  The reservations of rights clauses, on the other hand, allow CNA to ***prospectively*** alter or amend its welfare benefits offered to retirees, even after retirement, and that is what it did.

*Id.* at 637-638 (emphasis supplied and in original).[10]

### 3.    Plaintiff's reliance on *Barker I* and *Barker II* is misplaced.

Plaintiff has previously argued that the interpretation of the Plan language at issue in this case should be controlled, not by the cases cited herein, but by two other Eighth Circuit decisions.  *See Barker I,* 122 F.3d 628*,* and *Barker II,* 193 F.3d 976.  Those cases, however, do not, in fact, support Plaintiff's position.

At issue in *Barker I* and *II* was whether the plan sponsor was authorized to eliminate its promise under a long-term disability plan to pay the health, dental, and life insurance premiums for disabled employees during the course of their disability.   In *Barker I,* the Eighth Circuit addressed language in the long-term disability plan different than that found in *Howe* and the present case.  Of major significance was the following provision:

> If the group Long-Term Disability Plan terminates, and if on the date of such termination you are totally disabled, ***your Long-Term Disability benefits and your claim for such benefits will continue as long as you remain totally disabled as defined by the plan***.

*Barker I*, 122 F.3d at 631 (emphasis supplied).  Unlike the language in *Howe* and the present case, this language is not limited to "benefits to which [a participant] **has become entitled prior to the effective date [of a plan termination or amendment**]."  SOMF, ¶ 60.  Indeed, the Eighth Circuit makes this distinction explicit by contrasting the language in the Ceridian long-term disability plan from the following language in the Ceridian health, dental and life plans:

> If, while you or your dependents are covered under this plan, the plans terminates or the class of employees of which you are a

---

[10] *See also Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003) (plan language providing that a plan cannot be amended in a way that would "diminish any rights accrued for the benefit of the participants prior to the effective date of the amendment" does not abrogate a plan's right to prospectively terminate benefit coverage as distinguished from altering benefits for which the payment has become due); *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) ("Coverage under a medical insurance policy or plan is normally triggered by one of two events.  If a policy insures against illness, coverage for all medical costs arising from a particular illness vests when the illness occurs … If a policy insures against expenses, coverage vests when the expenses are incurred.") (citations omitted)

> member has its coverage terminated, ***then no benefits (including extended benefits) will be payable to you for any charges, fees, or expenses incurred on or after the date of termination of the policy or termination of the class***.

*Barker I*, 122 F.3d at 631 (emphasis supplied).

Even more significantly, as described in *Barker II*, the Eighth Circuit ultimately resolved the ambiguity it found in the long-term disability plan's language, which it found in *Barker I*, in favor of the plaintiff employees on the basis of the following extrinsic evidence:  (i) testimony of the Ceridian Director of Employee Benefits ***who drafted the plan's reservation of rights provision*** that he did not intend for it to enable the employer to change or take away benefits once a person became disabled (193 F.3d at 980); (ii) testimony to the same effect by Ceridian's former Vice President of Compensation at the time (*id.* at 982); and (iii) testimony of one plan participant that she was told by a representative of Ceridian at the time of the provision's adoption that the company would not be permitted to change benefits once a person was disabled ***notwithstanding the plan's reservation of rights provision***.[11]  *Id.*

No similar extrinsic evidence is present in this case.  First, no Great-West executive (much less one who could testify as to the ***contemporaneous*** intent of the drafter(s) of the relevant Plan language) has testified that Great-West intended for the Medical Coverages to be vested notwithstanding the Plan's reservation of rights provision.  Second, while Plaintiff has declarations from a number of class members stating that they were told that their Medical Coverages would continue as long as they were disabled, unlike the employee in *Barker II*, none has testified that they were told that the Plan's ***reservation of rights provision*** would not affect such continuation.  SOMF, ¶ 99.  As previously noted, the Eighth Circuit has recognized that

---

[11] Of particular importance, the Court in *Barker II* discounted the testimony of Michael Kotten, a Ceridian plan administrator, because he "had nothing to do with drafting the plan documents, having first assumed responsibility for employee benefits on a corporate-wide basis in October 1989."  *Id.*

merely stating that a benefit coverage will continue "for life" or as long as a person is disabled is insufficient to create a vested right where the Plan contains a reservation of rights provision.  *See* §IV.B.1, *supra*.

Finally, unlike here, the relevant SPD's in *Barker I* and *II* do not contain language explicitly and clearly describing the fact that, notwithstanding the modification or termination of the Plan, the only coverage that vests under the Plan is "***coverage for services provided prior to the effective date of the change***."  *Compare Barker I*, 122 F.3d 628, 631 (8th Cir. 1997) *and Barker II*, 193 F.3d  976, 978-979 (8th Cir. 1999) *with* SOMF, ¶ 62.[12]

Thus, none of the evidence that Plaintiff has proffered, or which Great-West expects Plaintiff to proffer, is sufficient to carry its burden of proving that Great-West intended to vest the continuance of Medical Coverages for disabled persons (on the same basis as active Plan participants) so long as they remain disabled.  Written and oral statements that certain benefits will continue for life as long as he or she is disabled have been found to be inadequate to carry such burden unless such statements explicitly provide that such continuance of benefits will not be affected by the plan's reservation of rights provision.  Discovery has not revealed any documents or oral communications of the type that might be relevant to establishing that Plaintiff's continuation of the Medical Coverages was vested, nor is Great-West aware of the existence of any such evidence.  *See* SOMF, ¶¶ 94-95, 97-99.  To the contrary, all of the written

---

[12] Likewise, *Jensen v. SIPCO* is distinguishable from the present case because, in that case, plaintiffs presented the following evidence:  (i) testimony of employer officers that the plan reservation of rights provision was not intended to allow the employer to terminate retiree medical benefits for employees who had retired; (ii) evidence that the employer had maintained a consistent practice of only modifying retiree benefits prospectively (*i.e.*, as to participants who had not yet retired) and (iii) evidence that the employer consciously chose not to put the plan reservation of rights language in the plan SPD.  Like in *Barker II*, where similar employer testimony was presented, the Court in *Jensen* determined that such extrinsic evidence, which is not found in the present case, was "overwhelming" and dictated the court's administration of the employer's intent.  *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 951 (8th Cir. 1994).

and oral communications relied upon by Plaintiff are of the type discounted by the Eighth Circuit.

Moreover, Plaintiff has not referred to or proffered any extrinsic evidence to support her contention that the "provided, however" clause in the Plan's reservation of rights provision was intended by Great-West to vest the benefits at issue in this case.  All of the deposition testimony is to the contrary.  On the other hand, the SPD in effect at the time of the termination of Plaintiff's Medical Coverages explains in clear and simple language that, after a termination or modification of benefits pursuant to Great-West's reservation of rights, all that is vested is "coverage for services provided prior to the effective date of such change."  *Id.*, ¶ 62.  Such an interpretation, as demonstrated above, is precisely consistent with the interpretation of similar provisos by the Eighth Circuit and other courts.

### C.  Great-West's Interpretation Of The Plan Language At Issue Is Reasonable Under The *Finley* Factors

Plaintiff not only cannot carry its burden of proving that the benefits at issue were vested for the reasons described above, but even more so cannot carry such burden when, as is the case here, it must establish that Great-West's interpretation of the relevant plan language is not reasonable pursuant to the applicable abuse of discretion standard of review.  The Eighth Circuit employs a five-factor test to determine whether an interpretation of a welfare benefit plan is reasonable.  These factors are:  "(1) whether the interpretation is consistent with the plan's goals; (2) whether the interpretation renders any plan language meaningless or internally inconsistent; (3) whether the interpretation conflicts with ERISA requirements; (4) whether the administrator has consistently interpreted the relevant terms; and (5) whether the interpretation is contrary to the plan's clear language."  *Smith*, 474 F.3d 1033, 1036 (8th Cir. 2007), citing *Finley v. Special Agents Mutual Benefit Association, Inc.* 957 F.2d 617, 621 (8th Cir. 1992).

As demonstrated above, Great-West's interpretation of the relevant Plan language is consistent with the Eighth Circuit's interpretation in *Howe* of substantially identical language. *See Howe*, 896 at 1108-1110, *supra*.  Therefore, it certainly cannot be regarded as "contrary to the [P]lan's clear language."  *Smith*, 474 F.3d at 1036.  As demonstrated below, Great-West's interpretation of the Plan also clearly satisfies the remaining four Finley factors.

**1.      Great-West's interpretation of the reservation of rights provision has been consistent.**

Paragraphs 64-72 of the Statement of Material Facts demonstrate that Great-West over the past 25 years has consistently terminated and modified benefits and coverage rights pursuant to the Plan's reservation of rights provision and SPD language explaining Great-West's discretion to so terminate or modify the Plan.  Such prior terminations and modifications of Plan benefits and coverages are consistent with Great-West's interpretation of the last clause of Section 5.1 as merely vesting benefits after a claim is made for a particular medical service.  The Eighth Circuit has held that such a consistent interpretation of a plan satisfies both the first and fourth of the *Finley* factors.  *See Howe*, 896 at 1108-1110.  Unlike *Barker II* and *Jensen*, where the employer excepted "vested benefits" from plan changes, here, no such thing occurred. Moreover, there is no evidence in the record that any Plan participants previously complained to Great-West as a result of its consistent pattern of amending or terminating Plan terms in accordance with its rights under Section 5.1 of the Plan and the SPD.

**2.      Great-West's interpretation does not render any Plan language meaningless and it does not conflict with the goals of ERISA.**

The Plan's reservation of rights provision and the previously quoted SPD language explaining such rights reflects Great-West's goal to maintain broad discretion to terminate or modify Plan benefits and coverages.  The importance of such a goal and Congress' intent to facilitate it is manifested by the fact that ERISA does not require the vesting of any employee

welfare plan benefits. *See Hutchins*, 110 F.3d at 1345; *Stearns*, 297 F.3d at 711. As the Eighth Circuit and other courts have recognized, Plaintiff's interpretation of the Plan would essentially eviscerate such Plan flexibility by invalidating the employer/plan administrator's right to terminate or modify any benefit because such interpretation would hold any benefit to be vested once it had initially been granted (accrued). *See Howe*, 896 F.2d at 1108-1110; *Hackett v. Xerox Corp. Long-Term Dis. Income Plan*, 315 F.3d at 774. Courts have, as previously demonstrated, harmonized and reconciled the different parts of reservation of rights provisions like Section 5.1 by interpreting the language in the last clause of such provisions as prohibiting the divestiture of benefits to which a person "already has become entitled" as being limited to a participant's right to reimbursement for covered medical services rendered prior to a termination of such coverage.[13]

Likewise, in order to give meaning to all plan provisions and harmonize all plan language, the Eighth Circuit and other courts have consistently held that where a plan contains a reservation of rights provision and also promises certain benefits "for life" the latter promises are subject to termination pursuant to the reservation of rights provision absent explicit plan language to the contrary. *See Anderson*, 836 F.2d at 1518; *DeGeare v. Alpha Portland*, 652 F. Supp. 946, 961 (E.D. Mo. 1986) (vacated on other grounds) (court found "harmonious and reasonable the interpretation of [the employer] of the written documents to provide lifetime benefits subject to [the employer's] ... reserved right to amend"); *In re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 58 F.3d 896, 903-904 (3rd Cir. 1995); *Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 99 (2d Cir. 2001).

---

[13] *See Howe*, 896 F.2d at 1108, 1110; *Vallone*, 375 F.3d at 637-638; *Frahm v. Equitable Life Assur. Soc. of U.S.*, No. 93 Civ. 0081, 1997 WL 159352, at **2, 9 (N.D. Ill. 1997) (court granted judgment for the defendant where a summary plan description contained both an express reservation of rights clause and a promise of benefits to which members "shall have become entitled to prior to amendment" on the ground that "the company reserved to itself the right to amend its plan at any time.").

31

Consistent with the reasoning of the above cases, Great-West's interpretation of the Plan language at issue in this case satisfies the remainder of the *Finley* factors.  Accordingly, not only has Plaintiff failed to carry her burden of proof that the benefits at issue were vested, she has also failed to establish that Great-West's interpretation of the Plan is unreasonable.

## D.   The Medical Coverages At Issue Were Eliminated In Accordance With The Terms Of The Plan And ERISA

Plaintiffs also assert that Great-West's procedures for amending the Plan were improper because such procedures allegedly violated the terms of the Plan.  The undisputed record establishes that Great-West's Plan amendment was procedurally proper under the terms of the Plan, ERISA and relevant case law.

Section 5.1 of the Plan authorizes Plan amendments through "a written instrument signed by an officer of the Company."  SOMF, ¶¶ 60, 82.  Great-West sent the Plan participants written notices informing them of the Plan changes.  *See id.*, ¶¶ 83-84.  These written notices, dated October 27, 2004 and November 8, 2004, were on official Great-West stationary, sent to all long-term disability recipients, informed such participants of the Plan changes, and were "signed by an Officer of the Company" (in this case George Bogdewiecz, Vice President of Human Resources).  *Id.*

Plaintiffs have previously characterized these letters as "informal."  However, such characterizations have no legal meaning and contradicts case law from other Circuits that have expressly decided the issue at hand.  *See, e.g., Bouboulis v. Transp. Workers Union.* 442 F.3d 55, 62 (2d Cir. 2006) (distinguishing a letter notifying participants of a plan modification from other "less formal" communications that were deemed insufficient to modify ERISA plans because the letter at issue "was on official stationary and sent to all Plan participants"); *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 926-27 (5th Cir. 1995) (plaintiff's assertion

that a plan amendment was not formally adopted was without merit because a plan administrator sent a letter to all Plan participants notifying them of the amendment).

Moreover, shortly after Great-West sent out these notices to the long-term disability recipients, Great-West, on January 1, 2005, amended the SPD by eliminating the Designated Coverages. *See* SOMF, ¶ 85. Great-West's combination of sending the Plan participants the October and November letters and its subsequent change to the SPD constituted a proper Plan amendment. *See Ross v. Rail Car America Group Disability Income Plan*, 285 F.3d 735, 738-39, 743 (8th Cir. 2002) (plan was validly amended when the vice president of an employer, acting on behalf of a plan administrator, provided plan participants with a personalized memorandum describing the amendments and subsequently provided them with a revised SPD reflecting the amendments). *See also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1279 (11th Cir. 2005) (finding a revised SPD containing a description of the amendment was a sufficiently formal writing to meet the statutory amendment requirements).[14] Therefore, the procedure followed by Great-West in effectuating the January 1, 2005 Plan amendments was not "informal" and clearly satisfied both the terms of the Plan and ERISA's statutory requirements.

### E. The Court Should Exercise its Discretion and Deny Plaintiff Halbach's Request for Penalties Under ERISA

Halbach, seeks penalties related to Great-West's actions in response to Lewis' February 1, 2005 request for plan documents. SOMF, ¶¶ 30-31. As demonstrated herein, the Court should exercise its discretion under §502(c) and deny Plaintiff's claim because Halbach has not made, and cannot make, any showing of prejudice or bad faith, which would support an

---

[14] Great-West's procedure for amending the Plan clearly complied with ERISA's requirements, such as ERISA § 104(b)(1). Section 104(b)(1) provides in part that "a summary description of [a material] modification or change shall be furnished to participants and beneficiaries not later than 60 days after the date of the adoption of the modification or change." 29 U.S.C. § 1024(b)(1). The October and November letters notified the Plan participants of the Plan's impending amendment approximately two months before the relevant Plan changes took effect.

award of penalties.  *See Dickson v. A.B. Holding Co.*, No. 4:03CV1798 CDP, 2005 WL 1828821

(E.D. Mo. Aug. 2, 2005) (recognizing that penalties were not warranted because plaintiff had not

shown bad faith or prejudice); *Wilson v. Moog Automotive, Inc. Pension Plan*, 193 F.3d 1004,

1010 (8th Cir. 1999) (same).  As this Court previously recognized, untimeliness alone, is an

insufficient basis for awarding penalties under ERISA §502(c).  *Wasielewski v. Kirberg Roofing,*

*Inc.*, 821 F. Supp. 1303, 1305 (E.D. Mo. 1993).

Lewis' first request for documents was sent on February 1, 2005.  SOMF, ¶¶ 100, 102.

In response to that request, John Mulski, the Plan Administrator, provided a substantive response

to why Lewis' continued Medical Coverages were terminated and also stated that, as a result of

Lewis' death, the requested documents would not be sent.  *See id.*, ¶¶ 104-106.   On September

19, 2005, over six months after Lewis' death, Lewis' attorney, Mark Potashnick sent his second

request for documents.  *See id.*, ¶¶ 107-108.   On November 21, 2005, Chelle Dillabough, the

then Plan Administrator, sent Mr. Potashnick the Plan, the SPD, the Annual Report and the Trust

Agreement, the documents specified under §104(b)(4).  *See id.*, ¶ 109.

Based on these facts, it is clear and cannot be disputed that Great-West acted in good

faith when it decided not to send the requested documents in March 2005.  At that time, Great-

West had been recently notified of Mr. Lewis' death, and, as such, reasonably concluded that the

request for documents was moot, as with his death, any claimed for Medical Coverages ceased.[15]

---

[15] Upon Lewis' death on March 6, 2005, Lewis' status as a Plan participant terminated.  Therefore, whether Halbach may receive penalties on behalf of Lewis depends, in part, on whether Lewis is a "participant or beneficiary" under ERISA, as required by Section 502(c).  *See Bruch*, 489 U.S. 101, 117-18 (1989) (Court held that claims for penalties under §502(c) are only available to participants and beneficiaries.  The term participant includes former employees who have "a colorable claim that (1) he or she will prevail in a ***suit for benefits***, or that (2) eligibility requirements will be fulfilled in the future.) (emphasis supplied).

ERISA §3(7), in relevant part, defines "participant" as "any employee or former employee of an employer … who is or may become eligible to receive a ***benefit*** of any type from an employee benefit plan … ."  29 U.S.C. § 1002(7) (emphasis supplied).  Former employees, like Lewis, may be entitled to assert a claim for benefits so long as they have a "colorable claim" to "vested" benefits.  *See Mead v. Intermec Tech. Corp.*, 271 F.3d 718, 717 (8th Cir. 2001).  Courts have made it clear that Halbach's claim for penalties fails as a matter of law because, under ERISA,

With respect to Mr. Potashnick's September 2005 request for documents on behalf of Lewis (his second request), even though Great-West still reasonably believed that it had no obligation to furnish the requested documents as a result of Lewis' death, it nonetheless sent a subset of the requested documents (per § 104(b)(4))[16] on November 21, 2005.  *See* SOMF, ¶ 109.

Finally, based on the Court's prior Orders regarding Halbach's lack of standing to assert Count I of the SAC on behalf of Lewis, it is clear that neither Lewis nor his estate were prejudiced by Great-West's reasonable decision not to send the requested documents until November 2005.  Since as of March 6, 2005, Lewis was no longer a participant of the Plan with a claim for the benefits at issue in this case, Lewis' estate clearly could not have been prejudiced by Great-West's decision not to send the requested documents.  Further, pursuant to Mr. Potashnick's February, 2005, letter, the documents were sought as part of an appeal of Great-West's alleged denial of benefits.  As this Court has decided, as of March 2005, any claim for benefits that Lewis could have discovered or clarified as a result of receiving or reviewing the requested benefits was rendered moot.  Therefore, there clearly was no prejudice to Halbach or Lewis' estate.

Accordingly, Great-West requests that if the Court finds that Halbach's claim for penalties is legally permissible, it should nonetheless exercise its discretion and deny Plaintiff's request for penalties.

---

*penalties* cannot be characterized as ***benefits*** that former employees may be entitled to.  *See Harzewski v. Guidant Corp.*, 489 F.3d 799, 805 (7th Cir. 2007) (former employee could not "sue to obtain the statutory penalty for failing to provide plan documents to a participant, ***since that penalty is not a benefit***.") (emphasis supplied); *Burch*, 489 U.S. at 117-18, *supra*.  Therefore, in addition to the factual analysis stated above regarding whether the Court should exercise its discretion by assessing the requested penalties against Great-West, it is clear that Halbach's claim for penalties fails because, as a result of Lewis' death, Lewis became a former employee who would only be entitled to seek ***benefits*** under ERISA, not penalties.

[16] ERISA §104(b)(4) states, in relevant part, that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

## V.     CONCLUSION

WHEREFORE, for the reasons stated herein and in Defendants' Motion and Statement of

Material Facts, Defendants request that the Court dismiss Plaintiffs' class and individual claims

in their entirety, with prejudice.

Dated: September 17, 2007                    Respectfully Submitted,

/s/Waldemar J. Pflepsen, Jr.
Waldemar J. Pflepsen, Jr. (Admitted *pro hac vice*)
Stephen H. Goldberg (Admitted *pro hac vice*)
Robin M. Sanders (Admitted *pro hac vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street, N.W. Suite 400 East
Washington, D.C. 20007
Telephone No. (202) 965-8000
Fax No. (202) 965-8104
E-mail: wjp@jordenusa.com
E-mail: shg@jordenusa.com
E-mail: rms@jordenusa.com

and

Michael E. Brown (No. 102204)
Leslie Greathouse  (Admitted *pro hac vice*)
Bradley J. Baumgart  (Admitted *pro hac vice*)
KUTAK ROCK LLP
1010 Grand Boulevard, Suite 500
Kansas City, Missouri 64106-2220
Telephone No. (816) 960-0090
Fax No. (816) 960-0041
E-mail: mike.brown@kutakrock.com
E-mail: leslie.greathouse@kutakrock.com
E-mail: brad.baumgart@kutakrock.com

and

Marcia Washkuhn (Admitted *pro hac vice*)
KUTAK ROCK LLP
The Omaha Bldg.
1650 Farnam Street
Omaha, Nebraska 68102-2186
Telephone No. (402) 346-6000
Fax No. (402) 346-1148
E-mail: marcia.washkuhn@kutakrock.com

Attorneys for Defendants, Great-West Life & Annuity

Insurance Company, Great-West Life & Annuity
Insurance Company Employee Welfare Benefit Plan,
Health & Welfare Plan for Employees of Great West
Life & Annuity Company, Great-West Life & Annuity
Insurance Company Flexible Benefit Plan, and Great-
West Life Staff & Agents' Plan

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of September, 2007, Defendants'

Memorandum of Law in Support of their Motion for Summary Judgment was served upon the

following counsel via the Court's electronic case filing system:

> S. Sheldon Weinhaus, Esquire
> Mark Potashnick, Esquire
> Weinhaus & Potashnick
> 11500 Olive Blvd., Suite 133
> St. Louis, Missouri 63141
> Tel: (314) 997-9150
> Fax: (314) 997-9170
> E-mail: attorneymp@hotmail.com
> E-mail: weidob@igc.org
>
> Attorneys for Plaintiffs

/s/ Waldemar J. Pflepsen, Jr.

Attorney for Defendants Great-West Life & Annuity Insurance Company, Great-West Life & Annuity Insurance Company Employee Welfare Benefit Plan, Great-West Life & Annuity Company Employee Health & Welfare Plan, Great-West Life & Annuity Insurance Company Flexible Benefits Plan, Great-West Life Staff & Agents' Plan

1