UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HEATHER HALBACH, et al.,                )
                                        )
            Plaintiff(s),               )
                                        )
        vs.                             )         Case No. 4:05CV02399 ERW
                                        )
GREAT-WEST LIFE & ANNUITY               )
INSURANCE COMPANY, et al.,              )
            Defendant(s).               )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #176], Plaintiffs' Motion for Summary Judgment [doc. #179], Defendants' Motion to Strike [doc. #195], Plaintiffs' Combined Motion to Strike Defendants' Reply in Support of their Statement of Material Facts, or in the alternative, Motion for Leave to File Plaintiffs' Reply to Defendants' Response to Plaintiffs' Statement of Uncontroverted Material Facts [doc. #207], Plaintiffs' Motion for Leave to File Short Surreply in Opposition to Defendants' Motion for Summary Judgment [doc. #208], and Plaintiffs' Renewed Motion to Modify Case Management Order [doc. #209].

## I. BACKGROUND FACTS[1]

---

[1]The Court's recitation of the facts comes from the Parties statements of uncontroverted material facts, and their responses to the opposing party's statements of uncontroverted facts. The Court notes where the Parties disagree over the facts.

Until December 31, 2004, Plaintiff Schield, and all disabled class members, received health, dental, vision, and prescription drug benefits (collectively "welfare benefits")[2] pursuant to Great-West Life & Annuity Company Employee Health and Welfare Plan (the "Plan") on terms equivalent to active, non-disabled employees.  On November 8, 2004,[3] Defendants mailed a letter to all plan participants giving notice that medical benefits would no longer be continued for current or future long term disability claimants, effective December 31, 2004.  Plaintiffs were no longer qualified as eligible participants under the Plan and were therefore informed that under the Federal Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), they had the option of continuing Plan coverage after their coverage ended, at higher COBRA rates, or losing their welfare benefits.  The letter only specifically mentioned medical benefits, however, dental, vision, and prescription drug benefits were also terminated.

## II.  PROCEDURAL HISTORY

Plaintiff Halbach filed suit, under 29 U.S.C. § 1132(a)(1)(B), against Defendants alleging that the Defendants amended their welfare benefit plan in violation of ERISA, and in violation of the Plans' terms, by denying benefits under Defendants' health insurance plans (Count I).  Plaintiff Halbach further alleged violations of ERISA for failure to provide information and documents in accordance with 29 U.S.C. §§ 1024(b)(4), 1133, and 1132(c)(1) (Count II).  Defendants filed a motion to dismiss on February 22, 2006, which was granted in part and denied in part.  This Court's June 6, 2006 order granted Defendants' Motion to dismiss Count I as it relates to Plaintiffs request for monetary relief, and as far as it alleged discrimination, but denied the motion

_____

[2]Plaintiffs also reference life insurance benefits.  However, the 2004 amendment did not effect life insurance benefits, and therefore is not at issue in the present lawsuit.

[3]Some letters were dated October 27, 2004.  However, all letters mailed to plan participants contained the same information.

as to Count I as it related to the vesting of benefits. The Court denied the motion to dismiss as to

Count II. Following this Court's order, Plaintiff Halbach filed an Amended Complaint which was

accepted for filing on June 28, 2006, and subsequently, Plaintiff Halbach filed a Second Amended

Complaint on October 2, 2006, adding Plaintiff Barbara Schield as a named Plaintiff. On

February 2, 2007 this Court held a Court hearing on Plaintiffs' Motion to certify the case as a

class action. This Court granted the motion, and entered an order on April 2, 2007, certifying the

class, and naming Plaintiff Schield as class representative. Defendants filed a Motion to Dismiss

Plaintiffs' Second Amended Complaint on October 23, 2006. This Court granted in part and

denied in part Defendants' Motion; the Court dismissed Plaintiff Heather Halbach's claims under

Count I for lack fo standing, and dismissed all claims under Count I for specific performance,

equitable tracing of overpayments and equitable restitution of overpayments. This matter now

comes before the Court on the Parties' cross motions for summary judgment.

## III. MOTIONS TO STRIKE

As an initial matter, the Court must address Defendants' Motion to Strike certain

declaration evidence which Plaintiffs rely upon in support of their Motion for Summary Judgment

and in Opposition to Defendants' Motion for Summary Judgment, and Plaintiffs' Motion to Strike

Defendants' Reply in Support of their Statement of Material Facts.[4] Defendants assert that

certain declaration evidence relied upon by Plaintiffs in support of Plaintiffs' motion for summary

judgment is improper under Rule 56(e) of the Federal Rules of Civil Procedure. These two

motions are currently pending and will be addressed at this time.

### A. PLAINTIFFS' MOTION TO STRIKE

---

[4]Plaintiffs alternatively request leave to file Plaintiffs' Reply to Defendants' Response to
Plaintiffs' Statement of uncontroverted Material Facts.

Plaintiffs' request to strike Defendants' Reply to Plaintiffs' Response to Defendants' Statement of Uncontroverted Material Facts filed in support of Defendants' Motion for Summary Judgment is denied. While the Court recognizes that Local Rule 7-4.01(E)[5] does not explicitly permit the filing of a reply to a statement of uncontroverted material facts, such filings are routinely permitted. Therefore Defendants Reply statement will not be stricken. Furthermore, it is not necessary for any additional documentation to be filed in support of, or in opposition to, the two pending motions for summary judgment. Therefore, Plaintiffs' alternate request to file a reply in support of their own statement of uncontroverted material facts is also denied. Both Parties have thoroughly argued the legal and factual issues raised in this case, such that the Court has all information necessary to reach an informed decision.

## B. DEFENDANT'S MOTION TO STRIKE[6]

---

[5]Local Rule 7-4.01 states, in pertinent part:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters shall be set forth with specific references to the portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Local Rule 7-4.01(E).

[6]Defendants dispute the admissibility of much of Plaintiffs' evidence, submitted in support of their Motion for Summary Judgment, and in opposition to Defendants' Motion for Summary Judgment. Both Parties reference this Court's prior rulings as support for their positions. This Court has previously decided that extrinsic evidence is discoverable, as it is relevant to a determination of the meaning of the terms of the Plan, however, this alone does not mean that all extrinsic evidence is admissible. The Court will review that evidence which is admissible under the rules of evidence, and which is relevant in accordance with the case law. This Court's prior

The Court next addresses Defendants' Motion to strike portions of the evidentiary record submitted by Plaintiffs' in support of Plaintiffs' Motion for Summary Judgment.

## 1. LEGAL STANDARD

Rule 56(e) states, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed. R. Civ. P. 56(e).

## 2. DISCUSSION

This Court has repeatedly recognized that a motion to strike under Federal Rule of Civil Procedure 12(f) cannot be used to strike portions of a party's motion for summary judgment or evidence in support thereof. *Burlington Northern Santa Fe Railway Corp. v. Dakota Missouri Valley and Western Railroad, Inc.*, 347 F.Supp.2d 708, 727 (Dist. S.D. 2004) ("Courts have consistently held that the various papers submitted in support of or in opposition to summary judgment motions are not pleadings as contemplated by Rule 12(f)."); *see also Brannon v. Luco Mop Company*, 2007 WL 172374, *1-2 (E.D.Mo. 2007). However, Defendants do not seek to strike the Plaintiffs' affidavits under Rule 12(f), but rather Defendants motion is premised on Plaintiffs alleged failure to comply with Rule 56(e) quoted above.

Although Rule 56 does not explicitly provide the Court authority to strike portions of affidavit testimony, as requested by Defendants, the rule does require all affidavits to contain "such facts as would be admissible as evidence." Fed. R. Civ. P. 56(e). Therefore, the Court will consider Defendant's arguments as they relate to the submitted evidence, and will only rely upon

discovery rulings are not dispositive of any of the claims to be decided by this Court.

that evidence which would be admissible at trial.  *See Anderson v. Dillard's Inc.*, 109 F.Supp.2d 1116, 1121 (E.D.Mo. 2000) ("Where an affidavit does not meet this standards [sic], it is subject to a motion to strike." (citing *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972)).[7]

### a. Unsigned Affidavits

Defendants' first argument is that three of the affidavits that were submitted are unsigned and therefore are inadmissible.  Rule 56(e) permits affidavits to be submitted in support of a motion for summary judgment.  Fed. R. Civ. P. 56(e).  An affidavit, is by definition, "a statement reduced to writing and the truth of which is *sworn* to before someone who is authorized to administer an oath."  *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (internal citation omitted).  Specifically, an affidavit must state "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).  (Signature)".  28 U.S.C. § 1746(2); *see also Elder-Keep*, 460 F.3d at 984.  In order to be admissible as evidence an affidavit must be signed.  *Elder-Keep*, 460 F.3d at 984 (The affidavits in question lacked signatures and attestation before a notary public, and therefore "the affiants failed to execute their affidavits under penalty of perjury as mandated by § 1746.).  The three affidavits challenged by Defendant do not contain a signature, and therefore do not comply with 28 U.S.C. § 1746, and will not be considered by the Court.

---

[7]The parties dispute whether or not a motion to strike is the appropriate procedural method of addressing the admissibility of evidence submitted in support of, or in opposition to, a motion for summary judgment.  This Court has clearly held that a Motion to Strike under Rule 12(f) is not appropriately used in response to a motion for summary judgment.  *Thomas D. Wilson Consulting Inc. v. Keely & Sons, Inc.*, 2007 WL 1774434 (E.D.MO. June 18, 2007).  However, Defendant correctly cites to *Anderson v. Dillard's Inc.*, where this Court recognized the appropriate use of a motion to strike pursuant to Rule 56.  109 F.Supp.2d 1116, 1121 (E.D.Mo. 2000).  While the Court recognizes the discrepancy in these two opinions regarding terminology, the Court would note that in both opinions this Court only considered relevant admissible evidence in reaching a decision on the respective motions for summary judgment.

### b. Hearsay Statements

Defendants next seek to exclude portions of affidavits submitted by class members on the basis that they contain hearsay. Specifically, Defendants argue that statements regarding the declarants' understanding of plan terms, and statements regarding what declarants were told by Defendant personnel are hearsay.

The Eighth Circuit has held that "without a showing of admissibility, a party may not rely on hearsay evidence to support or oppose [a summary judgment] motion." *Walker v. Wayne County, Iowa*, 850 F.2d 433, 435 (8th Cir. 1988); *see also Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir. 1986) ("[A] party may not rely on inadmissible hearsay in opposing a motion for summary judgment."). Federal Rule of Evidence 801 states: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by act of Congress." Fed. R. Evid. 802. "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).

The Court will first address those statements which reflect the declarants' understanding of plan terms. The only case cited by Defendants in support of the proposition that all statements made by declarants which begin with the phrase "I understood" are hearsay, is the case of *Booker v. Kessinger/Hunter Management, Inc.*, 2005 WL 2090777, *6 (W.D.Mo. Aug. 29, 2005). The district court in *Booker* excluded evidence contained in an affidavit which used the phrases "it is my understanding," "instructed by," and "directives I previously received." *Id.* The Court stated

that "[i]n other words, plaintiff's representations in these affidavits are based upon statements made to him by third parties. Such statements are hearsay." *Id. Booker* does not support Defendants' position that all statements in Plaintiffs' supporting affidavits which begin with the language "I understood" constitute hearsay. The participants understanding of the plan terms is not an out of court statement, nor does it rely on out of court statements. The Court in *Booker* specifically stated that "such information, if true, could only come from an unidentified third party." *Id.* The statements at issue here do not reflect information from a third party, but rather reflect the affiants own views. Furthermore, Plaintiffs are offering the statements to show how an average plan participant would interpret the language at issue, not for the truth of the matter asserted. Defendants' motion to strike this testimony is therefore denied.

The Court next addresses those statements in Plaintiffs' supporting affidavits which recite statements from Great-West employees, both identified and unidentified, made to plan participants. Plaintiffs argue that these statements are admissible, either because they are not hearsay under Rule 801, as an admission by party-opponent, or as an exception to the hearsay rule under Rule 804, as statements against interest. Fed. R. Evid. 801(d)(2) & 804(b)(3).

Rule 801(d)(2) excludes from the hearsay definition statements by a party-opponent if

> [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). Rule 804(b)(3) states that:

> The following are not excluded by the hearsay rule *if the declarant is unavailable* as a witness: . . . (3) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest or so far tended to subject the

declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Fed. R. Evid. 804(b)(3) (emphasis added).

As an initial matter, the Court concludes that Rule 804(b)(3) is not applicable, because Plaintiffs have not made a showing that the declarants are unavailable. Therefore, the statements are not admissible as statements against interest. However, the statements are admissible under Rule 801(d)(2). All of the individuals identified in the class members' affidavits were employees of Great-West, working in the employee benefits department, at the time the statements were made. The Parties disagree over precisely what role each employee held in the company, and therefore disagree over whether they had the authority to speak on behalf of the company. Defendants assert that only the Plan Administrator is authorized to interpret the plan, and therefore none of the statements are admissible under the party-opponent exclusion to the hearsay definition.

It is clear that under the terms of the Plan, and as represented by both Parties, the Plan Administrator was given power to delegate such authority to represent the terms of the Plan to Plan participants. Specifically, section 1.1. states that the Administrator is "[t]he Company or such other person or persons acting on behalf of the Company to whom the Company has delegated authority to administer the Plan . . . ." *Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 32. The statements at issue were made by those who were authorized to send letters and to make representations regarding plan terms to plan participants. The Court agrees with Plaintiffs, that the scope of Federal Rule of Evidence 801(d)(2) is sufficiently broad to encompass statements made by employees of Great West in the employee benefits department. The statements repeated in the affidavits are "statement[s] by the party's agent or servant

concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). Therefore these statements are not hearsay, and are admissible evidence.

### c. Statements not based on Personal Knowledge

Lastly, Defendants assert that the affidavits submitted by Plaintiff class members contain statements not based on personal knowledge. Specifically, Defendants object to the use of the phrase "I believe," in the Plaintiffs' affidavits. Plaintiffs dispute that this evidence is inadmissible. Plaintiffs argue that the affidavits which contain the language "I believe" were able to specifically recollect their understanding of the Summary Plan Description's ("SPD's") terms, even though they could not state with certainty that the SPD language presented to them was identical to the SPD language they reviewed at the time they became disabled.

In order for evidence to be admissible it must be "based upon the personal knowledge of the affiant; information and belief is insufficient." *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983). Therefore, the Court will not consider evidence which is not based on personal knowledge. Those portions of the affidavits which are based on belief will be excluded from evidence. However, the Court notes, that class members understanding of the SPDs is relevant evidence and is based on personal knowledge. While the affiants could not state with certainty that the SPDs with which they were provided in the course of this litigation were identical to those they reviewed at the time of their disability, and therefore their statements in that regard are inadmissible, they were able to testify as to their understanding at the time, which, as the Court addressed above, is relevant admissible evidence.

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

As an initial matter, the Court notes that there is currently pending before the Court Plaintiffs' Motion for Leave to File a Short Surreply in Opposition to Defendants' Motion for Summary Judgment. Plaintiffs' Motion for Leave is Granted, and the Court will consider the Plaintiffs' surreply in ruling on Defendants' Motion for Summary Judgment.

## A. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**B. DISCUSSION**[8]

**1. Count I**

---

[8]Defendants state in their brief in response to Plaintiffs' Motion for Summary Judgment, that this Court should not entertain a discussion of what standard of review is applicable, because Plaintiffs failed to address this in their opening brief, and that allowing them to do so in their reply brief denies Defendants the opportunity to adequately respond. The Court will address all arguments made by each party. Defendants have had ample opportunity to thoroughly brief all arguments, if not in their responsive brief to Plaintiffs' Motion for Summary Judgment, in their own briefs in support of their Motion for Summary Judgment.

Notwithstanding the overwhelming amount of briefing and numerous motions filed in this case, the issue before this Court is concisely stated as follows: were Defendants authorized, under the terms of the Plan in effect at the date of amendment, to terminate welfare benefits for long term disability recipients, or did Defendants' action result in the termination of vested benefits? However, there are two preliminary questions that must be answered before the Court addresses the issue of vesting. First, was the plan amendment validly enacted in accordance with the Plan's own terms? Secondly, what standard of review is applicable to Defendants' decision to amend the plan?

### a. Validity of Plan Amendment

Plaintiffs argue that Defendants failed to properly amend the Plan because they did not do so through a written instrument signed by an officer of the company, as required by the Plan's terms. Defendants' respond that the letters sent to plan participants constituted an amendment, because they outlined the substance of the amendment and were signed by an officer of the Defendant company. Furthermore, Defendants dispute that the letters failed to address the vision, dental, and prescription drug benefits, as these were specifically listed in the SPD that was attached to the letter and incorporated by reference. Plaintiffs dispute that the SPD was part of the letter, and therefore part of the alleged amendment.

"Every employee benefit plan shall -- (3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan . . . ." 29 U.S.C. § 1102(b)(3). "The text of § 402(b)(3) actually requires *two* things: a procedure for amending the plan and a procedure for identifying the persons who have authority to amend the plan." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (internal citation and alterations omitted) (emphasis in original). Furthermore, in order for a plan amendment to be effective, it must be

"executed in accordance with the Plan's own procedures and properly noticed . . .." *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 926 (5th Cir. 1995). In *Cossey v. Associates Health and Welfare Plan*, the district court held that changes to the SPD alone did not meet the plan amendment requirements. 363 F.Supp.2d 1115, 1136 (E.D. Ark. 2005. The district court concluded that there must be an amendment, in accordance with the plan amendment procedures, adopting the provisions in the SPD. *Id.* *See also Grosz-Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154, 1161-62 (9th Cir. 2001) (Holding that the "Benefit Summary language" is "null and void" because it was not enacted in accordance with the terms of the plan.).

Section 5.1 of the Plan states that the Plan can be amended "by a written instrument signed by an officer of the Company." *Great-West Life & Annuity Insurance Company Employee Welfare Benefit Plan*, as amended and restated, Effective as of January 1, 1997, § 5.1. The amendment procedure clearly complies with ERISA, as it provides a procedure for amendment, and identifies a person authorized to amend the plan. *See* 29 U.S.C. § 1102(b)(3). The Court must next determine whether such procedure was followed, leading to a valid amendment. *Williams*, 48 F.3d at 926. On September 30, 2004, the Benefits Advisory and Approval Committee approved the changes to long-term disability recipients welfare benefits. *Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 41. Following this meeting, Defendants sent all plan participants letters advising them of the changes, which would become effective January 1, 2007. Defendants rely upon these letters as the actual amendment, as the letters are the only documents which are signed by an officer of the company. Attached to the letters was a copy of the SPD, which contained new language in accordance with the change articulated by the Benefits Advisory and Approval Committee. The letters themselves only mentioned medical coverage,

however, the SPD's stated health, vision, dental, and prescription drug benefits would be eliminated.

In accordance with the district court in *Cossey*, this Court concludes that the SPD, eliminating the health, vision, dental, and prescription drug benefits does not constitute a valid plan amendment, as it was not signed by an officer of the company, in accordance with the plan terms. Furthermore, referencing the attached SPD in the body of the letter to plan participants is insufficient to incorporate the SPD into the plan amendment. The letter simply states: "Enclosed is a summary of all plan changes, decision-making tools, health plan overviews and a health care resource guide." *Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 44. The SPD was not executed in accordance with the amendment procedure.

The Court must then determine whether the letter itself, is sufficient to constitute a plan amendment, eliminating all health, dental, vision, and prescription drug benefits. The letters were signed by an officer of the company, and informed participants that the plan had been amended, effective January 1, 2005, to eliminate medical benefits. Specifically, the letter stated: "medical benefits will no longer be continued for current or future Long Term Disability claimants." *Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 44. The Court must address whether the term medical is sufficient to encompass all welfare benefits such that the letter itself constitutes a plan amendment.

The Court notes that the cases relied upon by Defendants are unpersuasive. In *Bouboulis v. Transport Workers Union of America*, the Second Circuit held that "we need not decide whether the Hall Letter was a statutorily required notice or was otherwise sufficiently formal, because even if the Hall Letter binds the defendants, it contains no language that affirmatively operates to create a promise to vest benefits for the Retirees." 442 F.3d 55, 62 (2nd Cir. 2006).

*Bouboulis*, does not hold that a letter to a participant is sufficiently formal to constitute a plan amendment; it does not even address a plan amendment, but rather ERISA's notice requirement. *Id.* Defendants also rely upon the case of *Williams*, which is equally unpersuasive. 48 F.3d at 926-27. The court in *Williams* held that where an amendment was presented and approved during a meeting of the Trustees, and a written notice of the change was mailed to plan participants, the amendment was sufficiently formal to satisfy ERISA. *Id.* at 927. However, there was no assertion in *Williams* that the amendment procedure required adoption of a proposal to be in writing and signed by an officer of the company, and therefore the validity of the amendment was not in question, but rather only its formality. *Id.*

The Court concludes that Defendants failed to validly amend the plan. All cases cited by Defendants are distinguishable because they do not involve a plan provision which requires an amendment to be in writing. Defendants may be correct that an SPD may constitute an amendment, sufficient to satisfy ERISA's notice requirements,[9] however, this does not mean that the SPD in the case at bar is sufficient to satisfy the requirement of the plan that an amendment be in writing *and* signed by an officer of the company. While the letter is signed by an officer, it does not satisfy the written instrument requirement. It fails to enumerate the benefits which are being eliminated and fails to notify the Plan participant of the specific changes to the plan documents. Defendants cannot rely upon the attached SPDs, as they were not part of the signed document. Therefore, the amendment was not properly enacted and is not binding upon the plan participants.

---

[9]*See Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1279 (11th Cir. 2005) ("SPDs, . . . as mandatory written instruments, required by ERISA to be 'sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan,' are sufficiently formal to meet the requirement of § 1102."). However, nothing in that opinion leads to the conclusion that an SPD is sufficient to satisfy a plan requirement that an amendment be in writing and signed by an officer of the company.

### b. Standard of Review[10]

The parties disagree over what standard of review is applicable to the Defendants'

decision to eliminate the provision of welfare benefits to long-term disability recipients.

Defendants assert that because the Plan gave the plan administrator discretion to interpret the

Plan, the validity of the amendment is subject to an abuse of discretion standard. The Plaintiffs

dispute this, arguing that the decision to amend the plan was a task undertaken by the Defendant

Company as plan sponsor, not as plan administrator, and therefore is not subject to discretionary

review.

"Consistent with established principles of trust law, . . . a denial of benefits challenged

under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989). If the plan provides discretion to the administrator or fiduciary, then an abuse of

discretion standard is applicable. *Conley v. Pitney Bowes*, 176 F.3d 1044, 1048 (8th Cir. 1999)

("The trial court correctly noted that since the terms of the plan grant explicit discretionary

authority to the employee benefits committee to construe the plan and to determine a claimant's

eligibility for benefits, the deferential 'abuse of discretion' standard of review would ordinarily be

appropriate."). However, the Supreme Court in *Firestone*, addresses a denial of benefits, not a

plan amendment. 489 U.S. at 115. "[I]n amending a plan, the employer is acting as a settlor[,]"

---

[10]The Court realizes that there is no need for further discussion, due to the Court's
conclusion that the amendment was not properly enacted, and therefore Plaintiffs' are entitled to
summary judgment on that basis alone. However, in order to thoroughly dispose of the two
pending motions for summary judgment, the Court will also address the ability of the Defendants
to eliminate long term disability claimants welfare benefits.

not as plan administrator, and therefore the abuse of discretion standard is not applicable. *Bennett v. Conrail Matched Savings Plan Administrative Committee*, 168 F.3d 671, 676 (3rd Cir. 1999).

The Plan states: "The Company reserves the right at any time to amend the provision of the Plan to any extent and in any manner that it may deem advisable, by a written instrument signed by an officer of the Company . . . ." *Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 32. The language "to the extent and in any manner that it may deem advisable" appears to give discretion to the company to amend the terms of the plan. However, to the extent that the Defendant company has authority to amend the plan, it is acting as plan sponsor, and not plan administrator, and therefore no deference is required. *See Bennett*, 168 F.3d at 676. The Court will review Defendants' decision to discontinue welfare benefits to long-term disability recipients under a *de novo* standard.

### c. Vesting of Benefits

The key issue before the Court is whether Plaintiffs had a vested right to welfare benefits for the length of their disability. As discussed above, this will be analyzed under a *de novo* standard, however, Plaintiffs have the burden of showing an intent to vest under ERISA. *Huchins v. Champion International Corp.*, 110 F.3d 1341, 1345 (8th Cir. 1997) ("[B]urden is on the claimant to show that his welfare benefits had vested under the terms of the plan."). This Court has previously decided, and will not readdress the issue, that the language contained in the Plan is ambiguous, as it relates to vesting of benefits. The reservation of rights provision, contained in

the plan, clearly states that some benefits do vest.[11]  However, it is unclear whether the welfare

benefits are vested, such that they are exempt from the reservation of rights provision.

Before this Court undertakes the analysis of the vesting of welfare benefits under the terms

of the Plan, the Court will address the appropriateness of summary judgment in the case at bar.

Normally an analysis of extrinsic evidence would require a trial on the merits in order to determine

the factual dispute between evidence presented by the parties.  *See e.g. Barker I*, 122 F.3d at 634.

However, in the case at bar the extrinsic evidence presented is not disputed.  The Court has

before it extrinsic evidence presented by the Plaintiffs, and argument presented by the Defendants.

Defendants do not present any extrinsic evidence in support of their position, with limited

exception, but rather point to the inadequacy of Plaintiffs' evidence, showing that Plaintiffs have

failed to satisfy their burden of proof that benefits vest.  Therefore, the Court believes it is

appropriate to resolve the issue on Summary Judgment.

There is no obligation that any benefits provided under an ERISA employee-benefit plan

vest, such that they are not subject to modification or termination by the employer.  *Barker v.*

---

[11]Article V of the Plan provides that :

5.1 **Amendment of Plan**.  The Company reserves the right at any time or times to
amend the provisions of the plan to any extent and in any manner that it may deem
advisable by a written instrument signed by an officer of the Company; provided,
however, that no such modification shall divest a Participant of benefits under the Plan
to which he has become entitled prior to the effective date of the amendment.

5.2 **Termination of Plan**.  The Company has established the plan with the bona fide
intention and expectation that it will be continued indefinitely, but the Company has
no obligation whatsoever to maintain the Plan in whole or in part for any given length
of time and may terminate the Plan in whole or in part by written instrument signed
by an officer of the Company at any time without liability; provided, however, that
such termination shall not divest a Participant of benefits under the Plan to which he
has become entitled.

*Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 32.

*Ceridian Corp.*, 122 F.3d 628, 634 (8th Cir. 1997) ("*Barker I*"). However, an ERISA employer

may contractually agree to the contrary. *Houghton v. SIPCO, Inc.*, 38 F.3d 953 (8th Cir. 1994)

("Plan . . . could be modified or terminated at anytime absent . . . contractual agreement to the

contrary." (internal quotation omitted)). When interpreting the terms of an ERISA plan, the

Court first looks at the trust instrument itself, which includes the plan document and the summary

plan descriptions. *Barker v. Ceridian Corporation*, 193 F.3d 976, 979 (8th Cir. 1999) ("*Barker

II*") (Trust instrument includes "formal ERISA plan and the summary plan descriptions.").

However, "[t]rusts law allows us to admit extrinsic evidence if the intent of the settlor cannot be

ascertained by examination of the trust instrument itself . . . ." *Id.* Specifically, in determining

whether benefits have vested, the Second Circuit has annunciated a succinct standard: "whether

the plan documents contain specific written language that is reasonably susceptible to

interpretation as a promise to vest benefits." *Bouboulis v. Transport Workers Union of America*,

442 F.3d 55, 60 (2nd Cir. 2005) (internal citation omitted). When interpreting the terms of an

ERISA plan, it is appropriate to give "'the language its common and ordinary meaning as a

reasonable person in the position of the [plan] participant, not the actual participant, would have

understood the words.'" *Barker I*, 122 F.3d at 632 (quoting *Chiles v. Ceridian Corp.*, 95 F.3d

1505, 1511 (10th Cir. 1996) (alterations in original).

There are a number of Eighth Circuit decisions which directly impact the Court's decision

in the case at bar. Due to the complex nature of the question before the Court, the Court will

address each of the major cases in some detail. Plaintiff cites repeatedly to two Eighth Circuit

cases, referred to as *Barker I* and *Barker II*. *Barker I*, 122 F.3d 628; *Barker II*, 193 F.3d 976.

These two cases held that extrinsic evidence was admissible to determine whether welfare benefits

for disabled employees vested at the time of disability. *Id.* In *Barker I*, the Court held that an

unequivocal reservation of rights clause, coupled with specific language in the disability plan which stated "if the group Long-Term Disability Plan terminates, and if on the date of such termination you are totally disabled, your Long-Term Disability benefits and your claim for such benefits will continue as long as you remain totally disabled as defined by the plan[,]" created ambiguity. 122 F.3d at 631. The Eighth Circuit reversed the district court's grant of summary judgment and ordered that extrinsic evidence be admitted to resolve the ambiguity. *Id.* at 639. The case was appealed a second time, and the Eighth Circuit examined the extrinsic evidence that was presented at trial. *Barker II*, 193 F.3d at 982. The issue before both the district court and the Eighth Circuit was whether the termination clause, quoted above, applied to both disability payments as well as welfare benefits. *Id.* The Eighth Circuit concluded that "[t]he district court's complete disregard of the only relevant testimony explaining Ceridian's intent regarding the reservations of rights in the summary plan descriptions makes the court's findings clearly erroneous[,]" and entered judgment in favor of the class.

Defendants dispute the relevance of *Barker I* and *Barker II*, for a number of reasons, all of which the Court finds unpersuasive. Defendants assert that the extrinsic evidence in *Barker I* and *Barker II*, addressed the reservation of rights clause, and not the disability provision of the SPD. Defendants argue that there is no evidence presented in the case at bar to tie the testimony of plan participants and plan representatives regarding the disability provision, to the reservation of rights clause. While the Court agrees that it would be beneficial if there was testimony specifically stating that the "provided, however," language refers to the welfare benefits at issue, such evidence is not available. Furthermore, unlike *Barker I and II*, the reservation of rights clause is not unequivocal; therefore the focus is on the provision providing welfare benefits, to determine if they vest within the exception to the reservation of rights clause. Defendants have provided no

evidence showing that the reservation of rights clause was applicable to welfare benefits, and the language itself supports a finding that it is not. The evidence that was presented by Plaintiffs supports a finding that the reservation of rights clause is inapplicable. There is testimony of plan representatives which state that the participant becomes entitled to welfare benefits upon a determination of total disability. This is the same language that is used in the reservation of rights provision, and is the type of evidence the Eighth Circuit recognized in *Barker I* and *Barker II*. Defendants also dispute the relevance of statements by plan participants. The interpretation of plan terms is to be done by giving the language "its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words." *Barker I*, 122 F.3d at 632 (citing *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) (alterations in original). Therefore the statements of plan participants are relevant to a determination of what a reasonable person would interpret the language to mean.

Another significant case decided by the Eighth Circuit is the case of *Jensen v. Sipco, Inc.*, 38 F.3d 945. The language in *Jensen*, stated that "benefits *will be* provided until the retiree dies, or a spouse divorces, or a child marries or reaches age 19." 38 F.3d at 950. The Court specifically held that "this type of provision supports an argument that retiree benefits are vested." *Id.* The reservation of rights clause contained no limiting language. The Eighth Circuit in *Jensen*, held that the clauses involved were not facially unambiguous, and therefore extrinsic evidence should be admitted to determine the intent of the settlor. *Id.* The Eighth Circuit looked at testimony by the CEO at the time the company was formed, testimony of the former Regional Employee Relations Manager, and the Benefits manager who prepared the SPDs, that the intent was to provide vested retirement benefits, as well as prior amendments to the plan which were

only prospective. *Id.* at 951. The Court concluded that "given this overwhelming extrinsic evidence, we agree with the district court that SIPCO in creating [the] Plan . . . intended that retirement medical benefits for salaried employees would vest when those employees retired." *Id.* The Court concluded that "[i]n most ERISA welfare benefit plans, a reservation-of-rights provision would reflect the employer's intent to make plan benefits non-vested. But here the provisions are not free of ambiguity, and plaintiffs have proved that SIPCO, in creating the Plans, did not have that intent." *Id.* at 952.

Defendants have not presented any extrinsic evidence to support their position that the plan intended to protect only "pipeline claims." They dispute the relevance, and sufficiency of Plaintiffs' evidence, as insufficient to show the contemporaneous intent of the plan sponsor at the time the plan language at issue was implemented, but fail to present evidence of such intent. The Court agrees that under Eighth Circuit precedent, evidence of the contemporaneous intent of the plan sponsor is relevant to the question of vesting, however, in the case at bar no evidence of contemporaneous intent has been presented to the Court. *See e.g. Barker I*, 122 F.3d 628. Plaintiffs have sought discovery[12] of all documents, and testimony related to the interpretation of the plan terms at issue, however, due to the length of time between the case at bar, and the initial drafting of the provisions, such evidence is limited. Therefore, Plaintiffs have provided evidence of the Defendants consistent interpretation of the plan provisions over the years that the plan has been in effect. Defendants have consistently interpreted the plan to provide for the continuation of welfare benefits for the duration of a plan participant's disability, or until age 65 or death. This interpretation is supported by the numerous letters that were sent to plan participants when they were first approved for disability benefits, which stated that benefits continued for the duration of

---

[12]Much of which has been overseen by this Court through numerous Motions to Compel.

the disability, it is supported by employee handbooks which repeatedly stated that welfare benefits continued for the length of a participant's disability, as well as by the terms of the plan itself, which expressly exclude from the reservation of rights clause those benefits to which a participant has become entitled.

The evidence in both *Jensen* and *Barker I* and *II*, was stronger than that presented by Plaintiffs in the case at bar. However, the evidence presented by Plaintiffs is sufficient to carry their burden of proof on the question of vesting. The Eighth Circuit in *Jensen* held that language stating a right to benefits for a specific duration, is indicative of vesting. 39 F.3d at 95. There are repeated references in the SPDs, and in the statements made by company employees, to a right to benefits for the duration of disability. This language, coupled with the reservation of rights clause which clearly states that it is inapplicable to those benefits to which a participant has become entitled, supports a finding that welfare benefits for long-term disability recipients were vested. The lack of specific evidence of the drafter's intent is not fatal to Plaintiffs' claims.

Defendants rely heavily on a provision of the SPD which specifically provides for the payment of services which are received prior to a plan amendment. That provision states: "If the Plan is amended or terminated it will not affect coverage for services provided prior to the effective date of the change." *Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 13. Defendants argue that this provision is conclusive of their position that the "benefits to which a person has become entitled" are those services which have already been performed, and not welfare benefits as argued by Plaintiffs. The Court agrees with Plaintiffs that this SPD language is not contrary to Plaintiffs' position. All benefit recipients, employees as well as disability recipients, would be entitled to the payment of benefits for services performed prior to the date of amendment or termination. However, the language of the long-term disability provisions clearly

24

state that benefits continue for the duration of disability.  This language alone is insufficient to overcome the abundance of testimony presented by Plaintiffs that the interpretation of the long-term disability provision provided for benefits to continue for the duration of the participants disability.

In the case at bar, the Court already determined that the intent of the settlor cannot be determined by the trust document itself.  *See Jensen*, 38 F.3d at 950.  The Plan, in effect at the time of the alleged amendment, makes clear that the Plan Administrator has the authority to amend or terminate the plan, except that such amendment or termination "shall not divest a Participant of benefits under the Plan to which he has become entitled."  *Defs. Memo. in Support of Defs. Mot. for Summ. Judg.*, Ex. 32.  The plan further stated that all long-term disability recipients' medical, vision, dental, prescription drug, and life insurance benefits would continue at employee rates throughout the term of the participants long term disability, or until age 65.  The Court concludes that Plaintiffs are entitled to reinstatement of their welfare benefits.  These benefits became vested upon a determination of disability, and therefore Defendants were not authorized under the terms of the Plan to terminate those benefits.  The Court grants Summary Judgment in favor of Plaintiffs on Count I of Plaintiffs Second Amended Complaint.

### 2.  Count II

The last issue for the Court to decide is whether Plaintiff Heather Halbach is entitled to statutory penalties under Count II of Plaintiffs' Second Amended Complaint.  On February 1, 2007, Plaintiffs' counsel sent a letter to defendant requesting documents relating to the ERISA plan at issue, and the relevant SPDs, following Defendants' decision to terminate welfare benefits, on behalf of Mr. Lewis.  Mr. Lewis passed away on March 6, 2005.  On March 17, 2005, Defendants sent a letter to Plaintiff Halbach's counsel stating that they were denying Mr. Lewis'

request for documents on the basis that Mr. Lewis was deceased.  On September 19, 2005, Ms.

Halbach, executrix of Mr. Lewis' estate, made a second request for production of the requested

plan documents and SPDs.  On November 21, 2005, Defendants provided Plaintiff Halbach's

counsel with copies of the plan document, SPDs, trust agreement, and most current annual report.

Plaintiff Halbach asserts that this was not responsive to the request as it provided 2005 SPDs,

rather than 2004 SPDs, which Plaintiff's counsel had requested.

In this Court's previous ruling on Defendants' Motion to Dismiss, the Court held that

Plaintiff Halbach had standing to challenge the Defendants' alleged failure to produce documents

in accordance with ERISA, because she represented Mr. Lewis' estate, and Mr. Lewis had a

colorable claim for benefits.  The Court will not address the question of standing a second time in

this opinion.  However, the Court must now address whether the evidence is sufficient to support

a summary judgment ruling in Plaintiff Halbach's favor on the question of statutory penalties.  The

parties do not dispute the facts recited above, and therefore summary judgment is appropriate.

ERISA provides that:

> The administrator shall, upon written request of any participant or beneficiary, furnish
> a copy of the latest updated summary, plan description, and the latest annual report,
> any terminal report, the bargaining agreement, trust agreement, contract, or other
> instruments under which the plan is established or operated.  The administrator may
> make a reasonable charge to cover the cost of furnishing such complete copies.

29 U.S.C. § 1024(b)(4).  ERISA further requires that:

> any administrator . . . (B) who fails or refuses to comply with a request for any
> information which such administrator is required by this subchapter to furnish to a
> participant or beneficiary (unless such failure or refusal results from matters
> reasonably beyond the control of the administrator) by mailing the material requested
> to the last known address of the requesting participant or beneficiary within 30 days
> after such request may in the court's discretion be personally liable to such participant
> or beneficiary in the amount of up to $100 a day from the date of such failure or
> refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B). The Eighth Circuit has clearly held that "[a]lthough an employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty, neither a defendant's good faith nor the absence of actual injury to the plaintiff precludes the award of a statutory penalty." *Brown v. Aventis Pharmaceuticals, Inc.*, 341 F.3d 822, 825 (8th Cir. 2003) (internal quotation omitted). Furthermore, it is not required that the individual suffer any loss of benefits as a result of the failure to provide documents. *Id.* As the Eighth Circuit stated in *Starr v. Metro Systems, Inc.*, "[t]he purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA, and to punish noncompliance. 461 F.3d 1036, 1040 (8th Cir. 2006) (internal citation omitted). "In exercising its discretion to impose statutory damages, a court primarily should consider the prejudice to the plaintiff and the nature of the plan administrator's conduct." *Id.* (internal citations omitted). The District of Nebraska held that there are various factors that should be considered, "'including bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.'" *Delcastillo v. Odyssey Resource Management Inc.*, 479 F.Supp.2d 1087, 1098 (D. Neb. 2007) (citing *Devlin v. Empire Blue Cross and Blue Schield*, 274 F.3d 76, 90 (2nd Cir. 2001).

In the case at bar, Defendants' refused to provide documents upon request, citing Mr. Lewis' death as the reason for the refusal. Nowhere in the statutory provision does it state that such a requirement to provide information is excused upon the death of the participant. Even assuming that Defendants believed they were not required to comply due to Mr. Lewis' death, the failure to supply document still requires some redress. *Brown*, 341 F.3d at 825. The Court notes, that Mr. Lewis did not pass away for more than a month after the request was made. ERISA

specifically provides that such documents shall be furnished within thirty (30) days of the request. 29 U.S.C. § 1132(c)(1)(B). Additionally, as noted by the Nebraska court, the length of the delay, more than nine months is significant. Even after a second request from Plaintiff Halbach, the Defendants took over two months to finally respond. Furthermore, the delay caused harm, as Plaintiff Halbach was unable to challenge Defendants' conduct, amending the Plan, until she had copies of the Plan documents. While there is no evidence of bad faith, there is also no evidence of a legitimate reason for the delay. Therefore, the Court concludes that statutory penalties are appropriate to address Defendants' failure to comply with the ERISA's requirements.

Plaintiffs assert that Defendants did not provide the relevant SPDs because it provided those from 2005, and not the 2004 SPDs that were at issue. However, the statute states that the administrator must provide the participant with "the latest updated" documents. 29 U.S.C. § 1024(b)(4). Therefore, there was no error in providing the 2005 SPDs, and the date of the production is November 21, 2005.

Defendants do not dispute that they failed to provide Mr. Lewis with the information that they requested. The only explanation provided for this refusal is Mr. Lewis' death. This is an insufficient basis for denying the requested information. However, the Court also notes that the Plaintiff has not provided evidence to support their assertion that the Defendants acted out of bad faith. Therefore, the Court orders that the Defendants pay Plaintiff Halbach $50.00 per day in statutory penalty. Mr. Lewis requested the documents on February 1, 2005 and Defendants eventually produced the documents on November 21, 2005, or 293 days later. 293 days at $50.00 per day equals $14,650.00.

## V. CONCLUSION

Plaintiffs have satisfied their burden of proof that the Plan amendment was invalid, and that it attempted to eliminate vested benefits. The evidence conclusively shows that the amendment procedure, as outlined by Defendants in Defendants' Motion for Summary Judgment, was insufficient as a matter of law to validly amend the Plan. The Plan's terms require that any amendment be in writing and signed by an officer of the company. The only signed instrument provided by Defendants are letters sent to Plan participants notifying them of the amendment. The detail in those letters was insufficient to satisfy the amendment requirements that the amendment be in writing. Furthermore, the SPD was not part of the letter and therefore cannot be read as part of the signed document. Secondly, the Plan amendment is ineffective in as far as it attempts to divest participants of benefits to which they have become entitled. The Court further concludes that Defendants violated ERISA's requirement to produce plan documents to a plan participant within thirty (30) days of a request for information. Therefore, Plaintiff Halbach, as the executrix of Mr. Lewis' estate, is entitled to a statutory penalty in the amount of $14,650.00.

The Parties shall submit to the Court, within sixty (60) days of this ruling, a joint memorandum including the names of all individuals who are entitled to reinstatement of their welfare benefits, as well as details of all benefits to be reinstated. This Court's granting of Plaintiffs' motion for Summary Judgment disposes of all issues that were to be tried, and therefore the trial setting is vacated.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #176] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment [doc. #179] is **GRANTED**. The Parties shall submit to the Court, within sixty (60) days, a joint memorandum with all individuals to be reinstated, and the benefits to which they are entitled.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike [doc. #195] is **GRANTED in part** and **DENIED in part.** The affidavits of Gloria Aron, Theresa Golding, and Constance Stathis, will not be considered by this Court. Furthermore, the Court will not consider those portions of the affidavits which state I believe, in reference to the SPD language. The remainder of the affidavits submitted in support of Plaintiffs' Motion for Summary Judgment are considered in ruling on the Parties' cross-motions for Summary Judgment.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Response to Motion [doc. #207] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Short Surreply in Opposition to Defendants' Motion for Summary Judgment [doc. #208] is **GRANTED**. Plaintiffs' Surreply is accepted for filing, and is considered by this Court in its ruling on the Parties' cross-motions for summary judgment.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend the Case Management Order [doc. #160] and Plaintiffs' Renewed Motion to Modify the Case Management Order [doc. #209] are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Propound Limited Discovery to Obtain Identification and Authentication of Documents [doc. #219] is **DENIED as moot**.

Dated this <u>19th</u> Day of <u>November</u>, 2007.


E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE